**EQUITABLE GAS COMPANY,**
**Appellant,**

v.

**Betty F. WADE, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2002.

Filed Oct. 31, 2002.

S. James Wallace, Pittsburgh, for appellant.

Eileen Yacknin, Pittsburgh, for appellee.

Before: LALLY–GREEN, BENDER, and GRACI, JJ.

LALLYGREEN, J.:

¶ 1 Appellant, Equitable Gas Company, appeals from the judgment entered on December 31, 2001, following a non-jury verdict in Appellant's favor. Appellant challenges the trial court's ruling on post-judgment interest. We affirm.

¶ 2 The factual and procedural history of the case is as follows. Appellant is a public utility supplying gas to customers in the Pittsburgh area. Defendant/Appellee, Betty F. Wade, is a customer of Appellant. On December 20, 2000, Appellant filed a complaint alleging that as of December 4, 2000, Wade owed $5,992.43 in overdue gas bills. Appellant sought judgment in the amount of $5,992.43, plus pre-judgment interest, plus post-judgment interest at the rate of 18%.

¶ 3 The legal rate of post-judgment interest is 6% per year, pursuant to 42 Pa. C.S.A. § 8101. Appellant contended that 18% post-judgment interest was collectible pursuant to a lawful tariff stating that Appellant was entitled to collect up to 18% annual interest on delinquent accounts until the bill is paid.

¶ 4 On February 13, 2001, Wade filed a motion for partial judgment on the pleadings. Wade argued that any post-judgment interest awarded in the case should be set at the 6% statutory rate. On May 24, 2001, the trial court (Wettick, J.) granted Wade's motion and struck Appellant's claim for 18% post-judgment interest.

¶ 5 The case proceeded to arbitration. On June 22, 2001, the board of arbitrators entered an award in Appellant's favor in the principal amount of $5,320.88.[1] Appellant appealed to the Court of Common Pleas. On December 27, 2001, the trial court entered a non-jury verdict in Appellant's favor in the amount of $5,320.88, plus prejudgment interest at 18%, plus post-judgment interest at 6%. The verdict was entered on the docket on December 31, 2001. Both parties filed post-trial motions, but Appellant filed its notice of appeal before the trial court disposed of the motions.[2]

¶ 6 Appellant raises four issues on appeal:

A. Whether the mere entry of judgment is sufficient to constitute payment of a debt?

B. Whether 42 Pa.C.S.A. § 8101 should preempt Equitable's tariff rate for late charges after entry of judgment?

C. Whether a utility's tariff should be interpreted as if it were a contract or construed as a statute?

D. Whether the trial court has jurisdiction to interpret a tariff contrary to its plain meaning and thus effectively change a rate established by tariff?

Appellant's Brief at 7.

¶ 7 Although styled as four arguments, Appellant raises four aspects of a single argument. Specifically, Appellant contends that it holds a lawful tariff authorizing a late charge of up to 18% per year until Wade's gas bill is paid in full, and that this 18% rate should apply to the

---

1. The reason for the discrepancy between the principal amount awarded and the principal amount demanded is unclear.

2. The trial court did not order Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.1925, and did not issue a Rule 1925 opinion.

judgment amount, rather than the 6% statutory rate of post-judgment interest.

¶ 8 The statute governing post-judgment interest is set forth at 42 Pa.C.S.A. § 8101, which states:

### § 8101. Interest on judgments

**Except as otherwise provided by another statute,** a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S.A. § 8101 (emphasis added). The legal rate is 6% per year. 41 P.S. § 202.

¶ 9 The judgment at issue is "a judgment for a specific sum of money," and the legal rate will apply unless statutory authority provides for a different rate. Appellant argues that it is entitled to a rate of 18%, based on two factors: (1) a regulation governing late payments of utility bills, as set forth in 52 Pa.Code § 56.22; and (2) a tariff that Appellant received from the Public Utility Commission. The regulation reads as follows:

TITLE 52. PUBLIC UTILITIES

PART I. PUBLIC UTILITY
COMMISSION

SUBPART C. FIXED SERVICE
UTILITIES

CHAPTER 56. STANDARDS AND
BILLING PRACTICES FOR RES-
IDENTIAL UTILITY SERVICE

SUBCHAPTER B. BILLING AND
PAYMENT STANDARDS
PAYMENTS

52 Pa.Code § 56.22 (2002)

**§ 56.22. Accrual of late payment charges.**

(a) Every utility subject to this chapter is prohibited from levying or assessing a late charge or penalty on any overdue utility bill, as defined in § 56.21 (relating to payment), in an amount which exceeds 1.5% interest per month on the full unpaid and overdue balance of the bill. These charges are to be calculated on the overdue portions of the bill only. The interest rate, when annualized, may not exceed 18% simple interest per annum.

¶ 10 We now turn to the tariff. The tariff, issued by the Public Utility Commission on January 6, 1998, and made effective on January 7, 1998, authorizes Appellant to issue the following charge to its customers:

### LATE PAYMENT CHARGE

If payment of a bill has not been received within twenty days from date of mailing, a Late Payment Charge of 1.5% per month [*i.e.,* 18% per year], will be added to the unpaid balance each month until the entire bill is paid.

*See,* Appellant's Brief in Opposition to Defendant's Motion for Partial Judgment on the Pleadings, Exhibit A (PUC Tariff).

¶ 11 Neither the regulation nor the tariff supersedes § 8101, for the simple reason that neither one is a "statute," as that term is defined by statutory and case law. "The term 'statute' specifically is defined in [1 Pa.C.S.A.] § 1991 as **'An act of the General Assembly** whether under the authority of the Commonwealth or of the late Proprietaries of the province of Pennsylvania.'" *Ambrosia v. Yerage,* 392 Pa.Super. 233, 572 A.2d 777, 780 (1990) (emphasis added). Our Courts are not at liberty to alter this statutory definition:

Under the Statutory Construction Act, the object of all interpretation of stat-

utes is to ascertain and effectuate the legislative intent. *See* 1 Pa.C.S.A. § 1921. In interpreting a statute, the words of the statute must be construed according to their plain meaning and usage, with technical words being given their technical meaning, "and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." *Id.* § 1903(a) (emphasis added). Section 1991, the definitional section of the Act, provides that when words defined in § 1991 are used in any statute enacted on or after September 1, 1937, they shall have the meaning ascribed to them in the section unless the context clearly indicates otherwise. *Id.; see also Habecker v. Nationwide Ins. Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982). When the legislature has so defined a word or phrase, we are bound by its definition. *Cf. Appeal of Neshaminy Auto Villa Ltd.,* 25 Pa.Commw. 129, 358 A.2d 433 (1976).... Thus, as a matter of statutory construction, whenever a statute, such as 42 Pa.C.S.A. § 8121, employs the term "statute," it cannot be construed to refer to anything other than statutes enacted by the Pennsylvania legislature.

*Id.* at 779–780.

¶ 12 The regulation and the tariff were not enacted by the Pennsylvania Legislature. Rather, both were issued by the Pennsylvania Public Utility Commission. *See, Aronson v. Pennsylvania PUC,* 740 A.2d 1208 (Pa.Commw.1999), *appeal denied,* 561 Pa. 700, 751 A.2d 193 (2000). As such, neither is a "statute" under Pennsylvania law. *Ambrosia, supra.* Accordingly, we hold that 42 Pa.C.S.A. § 8101 sets forth the legal rate of post-judgment interest on the judgment at issue.

█ ¶ 13 Appellant suggests that it should be able to collect 18% per year until Wade pays the principal amount due, regardless of the legal rate of post-judgment interest. According to Appellant, the 18% rate should remain in effect because the tariff authorizes an 18% rate "until the bill is paid."

¶ 14 We disagree. Appellant was certainly entitled to charge 18% per year pursuant to the tariff until and unless it obtained a final judgment in the Court of Common Pleas. At that point, the doctrine of merger applies. This Court explained the doctrine as follows:

> "When a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." *Restatement (Second) of Judgments* § 18. After the plaintiff recovers a final judgment, his original claim is extinguished and rights upon the judgment are substituted for it. "The plaintiff's original claim is said to be 'merged' in the judgment." *Restatement (Second) of Judgments* § 18 comment a.

*Kessler v. Old Guard Mut. Ins. Co.,* 391 Pa.Super. 175, 570 A.2d 569, 573 (1990).[3]

¶ 15 Under this doctrine, Appellant's choice to take recourse with the court system required it to be governed by the rules governing actions at law, including statutory provisions governing post-judgment interest. Under the merger doctrine, after Appellant recovered a final judgment, it may no longer pursue "part of the claim" (*i.e.,* a claim for 18% interest from the date of judgment until the bill is

---

**3.** Appellant properly points out that *Kessler* is factually distinguishable from the instant case, but we conclude that the principles set forth above are applicable to the instant case.

paid). Because the judgment extinguishes any claims with respect to the overdue bill, and because the only legal rate of interest on a judgment is set forth at § 8101, we conclude that the trial court did not err in dismissing Appellant's claim for 18% interest after the judgment was entered.

¶ 16 Judgment affirmed.