# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| PHILADELPHIA GAS WORKS | : | No. 14 EAP 2020 |
| | : | |
| | : | Appeal from the Order of |
| v. | : | Commonwealth Court dated |
| | : | December 9, 2019 at No. 1291 C.D. |
| | : | 2018, reversing the final orders of |
| PENNSYLVANIA PUBLIC UTILITY | : | the Pa. P.U.C. dated December 8, |
| COMMISSION | : | 2016, May 18, 2018 and August 23, |
| | : | 2018 |
| | : | |
| APPEAL OF: SBG MANAGEMENT | : | ARGUED:  December 1, 2020 |
| SERVICES, COLONIAL GARDEN REALTY | : | |
| CO., L.P. AND SIMON GARDEN REALTY | : | |
| CO., L.P. | : | |

## OPINION

**JUSTICE DONOHUE**                                         **DECIDED:  April 29, 2021**

At issue in this appeal is whether a public utility operating in Philadelphia may continue to impose its regulatory tariff rate on municipal liens that arise from delinquent customer accounts when the utility elects to record the liens for its service.  We conclude that pursuant to Section 7106(b) of the Municipal Claims and Tax Lien Law, 53 P.S. § 7106(b), once the lien is recorded, the tariff rate no longer applies.  Accordingly, we reverse the order of the Commonwealth Court.

SBG Management Services, Colonial Garden Realty Company, L.P., and Simon Garden Realty Company, L.P. (collectively "Appellants") own and manage residential buildings in Philadelphia.  Appellee Philadelphia Gas Works ("PGW") is a municipally-

owned utility that supplies gas to customers within Philadelphia, which is subject to the authority and control of the Public Utility Commission. *See* 66 Pa.C.S. §§ 102, 2122. Pursuant to the Municipal Claims and Tax Lien Law ("MCTLL"), when PGW provides gas services to a customer, the amount charged for the gas service immediately becomes a lien on the property serviced. *See* 53 P.S. § 7106(a)(1). That lien is extinguished upon payment of the charge. If the charge is not paid and the account becomes delinquent, the lien remains. Per Section 7106(b) of the MCTLL, such liens may be docketed with the prothonotary of the Philadelphia Court of Common Pleas. It provides as follows:

> With the exception of those claims which have been assigned, any municipal claim, municipal lien, tax, tax claim or tax lien, including interest, penalty and costs, imposed by a city of the first class, shall be a judgment only against the said property when the lien has been docketed by the prothonotary. The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall maintain an in rem index, the form and location of which shall be within the prothonotary's discretion. All tax claims, water rents or rates, lighting rates, power rates and sewer rates heretofore filed are hereby ratified, confirmed and made valid subsisting liens as of the date of their original filing.

53 P.S. § 7106(b). Further, the Public Utility Code allows utilities to impose an 18% per annum as a late fee on delinquent bills (hereinafter referred to as the "tariff rate"). *See* 52 Pa. Code § 56.22.[1] Historically, it has been PGW's practice to continue to assess its tariff on delinquent accounts, regardless of whether the lien on the account has been docketed with the prothonotary, until the delinquent bill is paid in full.

---

[1] "Every public utility subject to this chapter is prohibited from levying or assessing a late charge or penalty on any overdue public utility bill … in an amount which exceeds 1.5% interest per month on the overdue balance of the bill. … The interest rate, when annualized, may not exceed 18% simple interest per annum." 52 Pa. Code § 56.22(a).

In 2001, Appellants challenged charges assessed by PGW as well as, inter alia, its methodology for applying payments to their accounts and the amount of interest PGW was assessing on overdue charges. As a result of this dispute, many of Appellants' accounts became delinquent. PGW recorded more than three dozen of the municipal liens that resulted from these delinquencies and continued to impose its tariff as a penalty on these accounts.

Appellants subsequently filed a formal complaint with the Public Utility Commission ("the Commission"), claiming, inter alia, that PGW improperly charged its tariff rate against amounts represented by docketed municipal liens. Appellants argued that because a docketed lien acts as a judgment against the subject property, only the statutory post-judgment rate of 6% per annum could apply as to those amounts. An administrative law judge agreed with Appellants' challenge to the application of the tariff and recommended that PGW be ordered to refund all improperly billed amounts.

PGW was unsuccessful in its appeal of the administrative law judge's determination before the Commission. Equating a docketed lien with a final judgment, the Commission concluded that once a lien is docketed, the Commission lacks jurisdiction to determine the amount of a debt owed.[2] Because it lost its jurisdiction over the amount owed on those accounts, the Commission reasoned that its regulatory tariff rate could no longer apply and only the statutory post-judgment interest rate could be assessed on those accounts. The Commission ordered PGW to refund years of late fees and to

---

[2] The Commission explained that in such circumstances, although it lacks jurisdiction to entertain a proceeding by a public utility company to recover payment for its services, it may still entertain claims regarding the provision of services or billing disputes. PUC Opinion, 12/8/2016, at 74-75 (citing *Equitable Gas Co. v. Wade*, 812 A.2d 715 (Pa. Super. 2002); *Gasparro v. Pa. Pub. Util. Comm'n*, 814 A.2d 1282, 1283 (Pa. Commw. 2003)).

reorganize its billing operations within ninety days, and also imposed a financial penalty for improperly imposing the tariff fees.

PGW successfully challenged the Commission's determination in the Commonwealth Court. *See Phila. Gas Works v. Pa. Pub. Util. Comm'n*, 222 A.3d 1218 (Pa. Commw. 2019).[3] The Commonwealth Court explained that because PGW functioned as a public utility, it is entitled to employ all collection methods available under the Public Utility Code, including the levying of a late fee on delinquent accounts. *Id.* at 1222 (citing 52 P.S. § 56.22). Recognizing that the MCTLL provides that a lien against the serviced property arises automatically when a charge is assessed by the utility, the Commonwealth Court reasoned that "[j]ust as … a mortgage secures payment of an underlying personal loan, a municipal lien secures payment of the property owner's personal debt for unpaid gas bills" and explained that the act of docketing merely perfects the lien. *Id.* (citing 53 P.S. § 7106(b); *Vurimindi v. LandAmerica Fin. Grp., Inc.* (Pa. Commw., No. 2082 C.D. 2011, filed Nov. 29, 2012), 2012 WL 8700440 (non-precedential decision)). Continuing the analogy, the Commonwealth Court concluded that docketing a lien, as is true of a mortgage, gives notice of the existence of the lien to third parties but does not amount to a judgment. *Id.* (citing *Borough of Ambler v. Regenbogen*, 713 A.2d 145 (Pa. Commw. 1998)). The Commonwealth Court buttressed its conclusion with reference to Chapter Fourteen of the Public Utility Code, explaining that the General

---

[3] Appellants intervened in PGW's action in the Commonwealth Court. The Commonwealth Court's standard of review over a decision of the Commission is "limited to determining whether substantial evidence supports the necessary findings of fact, whether the Commission committed an error of law, and whether constitutional rights were violated." *Phila. Gas Works v. Pa. Pub. Util. Comm'n*, 222 A.3d 1218, 1221 n.5 (Pa. Commw. 2019).

Assembly promulgated that chapter to protect public utilities by providing them with the ability to use the collection measures provided for in both the Code and the MCTLL, thereby enhancing, rather than restricting, the available collection devices. *Id.* at 1222-23 (citing 66 Pa.C.S. §§ 1402(4), 1414(a); 2212(n)). The Commonwealth Court reasoned that the Commission's decision would force a utility to choose between the security provided by a perfected lien or the ability to impose its substantially higher tariff rate. The court found this to be anathema to the General Assembly's intent to strengthen utilities' ability to collect on delinquent accounts. *Id.* at 1223. The Commonwealth Court also disagreed with the Commission's determination that the docketing of a municipal lien removes the lien from the scope of the tariff. Recognizing that the Commission based this determination on *Gasparro v. Pennsylvania Public Utility Commission*, 814 A.2d 1282, 1283 (Pa. Commw. 2003), and *Equitable Gas Co. v. Wade*, 812 A.2d 715 (Pa. Super. 2002), the Commonwealth Court found these cases to be inapt support, as in both *Gasparro* and *Equitable Gas*, the underlying disputes proceeded through the judicial process to final judgment, and it was the entry of judgment that divested the Commission of jurisdiction to impose its tariff. *Phila. Gas Works*, 222 A.3d at 1223. Consequently, the Commonwealth Court determined that the Commission erred in holding that it lacked jurisdiction over the charges that are subject of a docketed lien and concluding that PGW could not continue to impose its tariff on delinquent accounts once they were subject to docketed liens. *Id.* at 1224.

This Court granted Appellants' petition for allowance of appeal to review the following issue:

> Whether the Commonwealth Court misinterpreted [Section] 7106(b), and whether the decision conflicts with *Equitable*

> *Gas v. Wade*, 812 A.2d 715 (Pa. Super. 2002), where that court held that a municipal lien arising out of delinquent bills for natural gas service constitutes a judgment, such that after a lien is docketed, [PGW] may only charge the customer the statutory interest rate applicable to judgments (6%) … rather than its tariff rate on late payments that have not been reduced to judgment (18%)[?]

*Phila. Gas Works v. Pa. Pub. Util. Comm'n*, 236 A.3d 1046 (Pa. 2020).

Appellants' primary argument is that the Commonwealth Court erred by failing to properly apply Section 7106(b), which provides that the recorded liens at issue in this case are judgments against the property. Appellants fault the Commonwealth Court for relying on the *Vurimindi* and *Regenbogen* cases to support its conclusion to the contrary, arguing that those cases are inapposite because neither involved Section 7106(b). *See* Appellants' Brief at 17-20. Appellants also argue that the Commonwealth Court's decision conflicts with *Equitable Gas*, which Appellants portray as establishing that once a lien becomes a judgment, a utility may impose only the statutory post-judgment interest rate of 6% per annum. *Id.* at 21-22 (discussing *Equitable Gas*, 812 A.2d at 717-19). Although in *Equitable Gas* the judgment was obtained following a trial, Appellants maintain that because Section 7106(b) confers a lien recorded in Philadelphia County as a judgment, this principle must apply with the same force and effect. *Id.* at 25-26. Appellants recognize that although the issue of when a lien becomes a judgment was not present in *Equitable Gas*, it was squarely at issue here, and the Commonwealth Court's failure to employ the salient language of Section 7106(b) in its decision was manifest error. *Id.* at 27.

Appellants further contend that if this Court were to find no merit to these arguments, they are still entitled to relief because of the deference due to the

Commission's conclusion that the tariff rate no longer applies to a municipal lien docketed in the Philadelphia Court of Common Pleas. Appellants' Brief at 29. Because issues related to billing practices of utilities falls "squarely within" the expertise of the Commission, Appellants argue, the law requires that its determination of how and when the tariff rate applies must be given great deference. *Id.* at 30-31 (citing *Popowsky v. Pa. Pub. Util. Bd.*, 706 A.2d 1197, 1203 (Pa. 1997)). It was appropriate, in Appellants' view, for the Commission to decide the limits of its jurisdiction over the claims before it and to conclude that it could pass only on the propriety of the imposition of the tariff rate. *Id.* at 30-31. Appellants criticize the Commonwealth Court for failing to acknowledge or address the deference to which the Commission's decision was entitled. *Id.* at 33.

The Commission likewise finds the primary fault in the Commonwealth Court's decision to be its failure to give effect to the plain language of Section 7106(b) and criticizes that court's reliance on *Regenbogen* and *Equitable Gas* as inapt. Commission's Brief at 10-16. The Commission further defends its decision below, explaining that it lacks jurisdiction over docketed municipal liens because it lacks the ability to award the requested relief, and that all such claims fall exclusively within the purview of the court of common pleas. *Id.* at 17. Nonetheless, even as to claims related to such docketed liens, the Commission asserts that as an administrative agency, it retains exclusive jurisdiction to decide issues concerning public utility service and billing issues; the result being that where a claim regarding a docketed lien is pending in the trial court, the doctrine of primary jurisdiction compels cooperation between the Commission and the courts, with the agency deciding any issues within its expertise and the courts resolving the financial claim for relief. *Id.* at 17-20 (discussing *Bell Tel. Co. v. Phila. Warwick Co.*, 50 A.2d 684

(Pa. 1947) and *Gasparro v. Pa. Pub. Util. Comm'n*, 814 A.2d 1282 (Pa. Commw. 2003)). It faults the Commonwealth Court for concluding that it could address aspects related to a docketed municipal lien beyond service and billing issues, arguing that it is within its own authority to make this initial, jurisdictional determination. *Id.* at 23-25. It asks this Court to reaffirm this principle. *Id.* at 16-17, 28.

Concerning the interpretation of Section 7106(b), PGW accuses Appellants of seeking to modify the term "judgment" therein with the qualifier "final." PGW's Brief at 22-24. PGW argues that docketed liens cannot be equated with final judgments because the lien lacks a requisite court determination of the amount due, which it considers to be an "essential attribute of a final judgment." *Id.* at 24-26. PGW bolsters its position by comparing Section 7106(b) to other sections of the MCTLL that use the phrase "final judgment." *Id.* at 26-27 (citing 53 P.S. §§ 7143, 7442, 7446, 7449, 7452, 7455). Emphasizing that Section 7106(b) lacks any qualifier before "judgment," PGW advocates that it cannot, by its plain terms, mean a final judgment. *Id.* at 27-28.

Alternatively, PGW argues that if this Court were to find the language of Section 7106(b) to be ambiguous, application of the rules of statutory interpretation would yield a result in its favor. Echoing the Commonwealth Court, PGW contends that four considerations — the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; and the object to be obtained — reveal that Section 7106(b) was intended to be a supplemental collection tool for utilities under the MCTLL, and that there is no indicia that the General Assembly intended utilities to have to choose between the tariff and post-judgment interest. *Id.* at 29-31. PGW also argues that an interpretation finding that a docketed lien is equivalent to a final judgment

conflicts with *City of Philadelphia v. Perfetti*, 119 A.3d 396 (Pa. Commw. 2015), and

*Augustin v. City of Philadelphia*, 897 F.3d 142 (3d Cir. 2018), in that those cases found

that the filing of a lien is a mere encumbrance on a property. *Id.* at 34-35. It is PGW's

position that construing Section 7106(b) in the manner proposed by Appellants would

impermissibly favor private interests over the public interest, as it would eliminate the

accrual of tariff charges upon the docketing of a lien, thereby decreasing the funds

received by the utility and increasing the burden on other consumers. *Id.* at 36. Moreover,

PGW disagrees with the position of Appellants and the Commission that the

Commission's interpretation of Section 7106(b) is entitled to any deference because at

issue here is a provision of the MCTLL, over which the Commission has no expertise, as

opposed to the Code. *Id.* at 40-41.[4]

The issue before us asks whether the Commonwealth Court's decision

misinterpreted Section 7106(b), which, we reiterate, provides as follows:

> With the exception of those claims which have been assigned,
> any municipal claim, municipal lien, tax, tax claim or tax lien,
> including interest, penalty and costs, imposed by a city of the
> first class, shall be a judgment only against the said property
> when the lien has been docketed by the prothonotary. The
> docketing of the lien shall be given the effect of a judgment
> against the said property only with respect to which the claim
> is filed as a lien. The prothonotary shall maintain an in rem
> index, the form and location of which shall be within the
> prothonotary's discretion. All tax claims, water rents or rates,
> lighting rates, power rates and sewer rates heretofore filed are
> hereby ratified, confirmed and made valid subsisting liens as
> of the date of their original filing.

---

[4] Although the issue of the Commission's jurisdiction figured into the Commission's ruling
and the Commonwealth Court's decision, and was addressed by the parties in their briefs,
it is beyond the scope of the issue upon which this Court granted discretionary review
and is not encompassed in our resolution of this appeal.

53 P.S. § 7106(b).

Section 7106(b) states that a docketed municipal lien "**shall be given the effect of a judgment** against the said property only with respect to which the claim is filed as a lien." 53 P.S. § 7106(b) (emphasis added). Contrary to this language, the Commonwealth Court concluded that the docketing of a municipal lien in Philadelphia County (the only first-class city in the Commonwealth) acts not as a judgment but only to perfect the lien. *See Phila. Gas Works*, 222 A.3d at 1222. The Commonwealth Court cited its *Regenbogen* decision in support of this pronouncement, *see id*, but this reliance is flawed. In *Regenbogen*, the Commonwealth Court discussed three procedural alternatives provided by the MCTLL that are available after a municipal **claim** is filed (to wit; the property owner can contest the claim by serving a notice to issue a writ of scire facias; the municipality can pursue a writ of scire facias on its own; or the parties may do nothing, allowing the lien to remain recorded indefinitely) that would have to be taken in order to obtain a judgment on the lien. *Regenbogen*, 713 A.2d at 148. In that case, after the municipality field a praecipe to issue the writ, Regenbogen filed a motion to strike the municipal claim on the basis that it was untimely filed. The trial court denied the motion, and Regenbogen sought to appeal the denial as an order affecting judgments. *See id.* at 147 (citing Pa.R.C.P. 341(a)(1) (enumerating interlocutory orders appealable as of right)). Rejecting that argument, the Commonwealth Court discussed the scire facias procedure and explained that there was no judgment in the matter until the trial court heard the underlying merits of the claim. *Id.* at 148. The contrast between *Regenbogen* and the present appeal is obvious: Section 7106(b) was not at issue in *Regenbogen* and Section 7106(b) explicitly says that the recording of a lien in Philadelphia shall have the effect of

a judgment. Thus, the Commonwealth Court's reliance on *Regenbogen* in this instance is misplaced.

The parties do not dispute that pursuant to Section 7106(b) the liens in question are to be treated as judgments. *See* Appellants' Brief at 12; PGW's Brief at 20; Commission's Brief at 10. The question before us thus narrows to interpreting the use of the term "judgment" within Section 7106(b), as this is where the parties' disagreement lies. In matters of statutory interpretation, our standard of review is de novo and our scope of review is plenary. *SEDA-COG Joint Rail Auth. v. Carload Express, Inc.*, 238 A.3d 1225, 1232 (Pa. 2020). When interpreting a statute, we strive to ascertain the intent of the General Assembly in enacting the law under review. 1 Pa.C.S. § 1921(a); *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019). The plain language of a statute is the best indication of the General Assembly's intent, and where the statutory language is clear and unambiguous, we must give effect to the plain language thereof. 1 Pa.C.S. § 1921(b); *Gavin*, 205 A.3d at 1221. We read the words of a statute in context, not in isolation, and in a manner so as to give meaning to each and every provision. *Gavin*, 205 A.3d at 1221.

Section 7106(b) uses "judgment" twice; the first sentence provides that municipal claims, liens and taxes imposed by a city of the first class "shall be a judgment" against the property when the lien has been docketed by the prothonotary. The second sentence, the portion of Section 7106(b) at the heart of the present dispute, provides that the docketed lien "**be given the effect of a judgment** against the said property" with respect to the claim underlying the lien. 53 P.S. § 7106(b).

The General Assembly's use of the phrase "given the effect of a judgment" is critical to the outcome here. As this Court explained nearly a century ago, "[w]hen

adverse litigants are present in court and there is a real controversy between them, a final decision rendered in any form of proceeding of which the court has jurisdiction is a judgment in the proper sense of that term[.]" *Petition of Kariher*, 131 A. 265, 270 (Pa. 1925).[5]  A judgment is the ultimate determination of the rights and obligations of the parties in a case, *see Zaleppa v. Seiwell*, 9 A.3d 632, 640 (Pa. Super. 2010); as such, it encompasses both a verdict in a trial by jury and a decision rendered by a judge in a bench trial.  *Sands v. Andino*, 590 A.2d 761, 764 (Pa. Super. 1991) ("[A] judgment is nothing more than the official entry of a verdict or decision of the trial judge upon the docket.").  By expressly stating that the docketed lien is to be treated like a judgment with regard to the underlying claim, the General Assembly has expressed its intent that docketing the lien have the same effect as a final determination of a dispute between parties without further proceedings that would generally be required to effectuate the result.

PGW contends that this conclusion is untenable because there can be no final judgment until a determination by a court of the amount of the judgment.  We disagree. The language of Section 7106(b) contains no indication that a court must approve the amount of the judgment that arises from the recording of a municipal lien.  *See Gavin*, 205 A.3d at 1221 (explaining that when interpreting a statute, "we must always read the words of a statute in context, not in isolation[.]"); *Consulting Eng'rs Council of Pa. v. State Architects Licensure Bd.*, 560 A.2d 1375, 1377 (Pa. 1989) ("It is an established rule that

---

[5]  As noted by the Superior Court, "mired in legal verbiage and accustomed to bandying around such terms of art[,]" practitioners "may sometimes lose sight of such fundamental delineations" as the meaning of the term "judgment."  *Dombrowski v. Cherkassky*, 691 A.2d 976, 977 (Pa. Super. 1997).

provisions of a statute are to be interpreted with reference to the context in which they appear.").

Section 7106(b) is not an anomaly. In other instances, our law provides for the entry of a judgment for a sum certain without first requiring a court to determine the amount of the judgment. Judgment by default may be entered without such adjudication. *See* Pa.R.C.P. 1037. Similarly, confessed judgments do not require inquiries into the propriety of judgment. *See* Pa.R.C.P. 2956. We further note that each of these procedures includes a mechanism by which the defendant can challenge the judgment after its entry. In the case of default and confessed judgments, the defendant may seek relief through the filing of a petition to strike or open the judgment. *See* Pa.R.C.P. 237.3 (providing procedure to obtain relief from default judgment); 2959 (providing procedure for striking or opening a confessed judgment). With respect to liens filed under Section 7106(b), pursuant to Section 7184, a property owner may challenge a recorded municipal lien, including the amount thereof, by serving the municipality with a notice to issue a writ of scire facias, thereby forcing a hearing on the lien and allowing the property owner to assert defenses thereto.[6] 53 P.S. § 7184; *N. Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1133 (Pa. Commw. 2013). Alternatively, a property owner may pay the amount of the

_____

[6] This procedure is not, however, mandatory, as Section 7106(c) permits the issuance of a writ of execution for the forced sale of the property **without** first proceeding with the writ of scire facias procedures to determine the validity or amount of the lien. 53 P.S. § 7106(c) ("A writ of execution may issue directly without prosecution to judgment of a writ of scire facias. Any property sold in execution shall be sold in compliance with the provisions of [S]ection 31.2 [53 P.S. § 7283].") The writ of execution is the mechanism by which a judgment is enforced. *See* Pa.R.C.P. 3102 ("Except as provided in Rule 3250 [regarding civil arrest following judgment and rescinded as of March 5, 1997], a judgment shall be enforced by a writ of execution substantially in the form provided by Rule 3252.").

lien into court and then obtain a hearing on the validity of the amount of the lien.  53 P.S. § 7182.

Section 7106(a)(1) establishes municipal claims, liens and taxes as liens of the first priority on the property upon which they are imposed.  53 P.S. § 7106(a)(1).  Singling out these liens underscores the General Assembly's intent to elevate the priority of these municipal claims so as to ensure their collection.  Like Section 7106(b), subsection (a)(2) provides that property tax liens be given the effect of a judgment rendered for a sum certain, even when the lien holder has not engaged in the usual judicial proceedings to have the lien reduced to a money judgment:

> A claim for property taxes that has been reduced to judgment shall be enforceable as a lien against real property in the same manner and to the same extent as a judgment for money under the generally applicable laws of this Commonwealth. For purposes of this clause, "reduced to judgment" means a claim rendered absolute under section 311 of the act of July 7, 1947 (P.L. 1368, No. 542), known as the "Real Estate Tax Sale Law," **and those given the effect of a judgment in accordance with this act.**

*Id.* § 7106(a)(2) (emphasis added) (footnote omitted).  Again, the General Assembly explicitly provided mechanisms by which liens for property taxes are to be treated as a judgment without further court proceedings.  Viewing the statutory scheme as a whole, it is apparent that the General Assembly intended to circumvent the traditional adjudicatory procedures and allow for docketed municipal liens in first-class cities to constitute a judgment on the property once it is docketed with the prothonotary.

PGW points to other provisions of the MCTLL in support of its position that the lack of the use of the term "final" in conjunction with "judgment" in Section 7106(b) is controlling.  *See* PGW's Brief at 26-27 (citing 53 P.S. §§ 7442, 7446, 7449, 7452, 7455).

Five of these statutes are identical to each other and address the procedure for municipalities to collect on certain types of liens. Each of these provides that municipalities proceed with a writ of scire facias for purposes of collection on a claim unless a court has already entered a "final order or judgment." *See* 53 P.S. §§ 7442, 7446, 7449, 7452, 7455. PGW also references Section 7143, which uses "final judgment" in the context of referring to the disposition of an appeal from an order regarding assessments. *See* 53 P.S. § 7143. All of these provisions are instances in which the General Assembly codified procedures for the adjudication of municipal lien claims. In each instance, the critical language was used in reference to an action already taken by a court, and it is the action taken by the court that is referred to as a judgment. This stands in contrast to the purpose of, procedure provided for, and the language employed in Section 7106(b). By use of the phrase "given the effect of a judgment," it eliminates the necessity to resort to a judicial proceeding and adjudication.

PGW contends that this conclusion conflicts with the Commonwealth Court's decision in *Perfetti* and the Third Circuit's decision in *Augustin*. *See* PGW's Brief at 34-35. In PGW's view, both cases hold that a filed municipal lien is a minimal intrusion on the owner's property interests such that no pre-lien notice or hearing is required, and it argues that the Commonwealth Court and Third Circuit would not have reached this conclusion if the lien were intended to be given the effect of a judgment. *See* PGW's Brief at 34-35. PGW's reading of these cases is unpersuasive.[7] In both cases, the courts entertained due process challenges to the MCTLL's lien procedures. While those courts

---

[7] Although both cases discuss the nature of municipal liens, neither address Section 7106(b)'s explicit directive that docketed municipal liens be given the effect of a judgment.

identified certain due process issues, both courts concluded that Section 7106(b) was not unconstitutional because there were existing available remedies for the property owner to challenge the validity and amount of the lien. *Perfetti*, 119 A.3d at 402, 405; *Augustin*, 897 F.3d at 151-52; *see also* p. 13, supra (discussing writ of scire facias). That neither court explicitly equated filed municipal liens to judgments does not change the substance of their conclusions, as that was not the issue presented in either case.

Furthermore, PGW's insistence that "judgment" in Section 7106(b) is meant to be interpreted as a mere cloud on the property's title is unpersuasive when considering Section 7106(c), which provides that "[a] writ of execution may issue directly without prosecution to judgment of a writ of scire facias." 53 P.S. § 7106(c). As noted above, a writ of execution is the mechanism by which a judgment is enforced. *See* n.6, supra. A prevailing party need only file a praecipe for a writ of execution in the county in which judgment was entered to set in motion the procedures necessary to sell the property and collect on the judgment. Pa.R.C.P. 3103(a). If the General Assembly had intended for a filed lien to constitute only a cloud on the title of a property, it would not have included a provision that allows the municipality to proceed directly to execution procedures on the lien.

In sum, we conclude that the terms of Section 7106(b) are clear and unambiguous. By requiring that docketed municipal liens in first-class counties "be given the effect of a judgment[,]" the General Assembly has expressed its intent that these docketed municipal liens be treated as the equivalent of a final resolution of a claim between parties.[8] "[A]

---

[8] In a dissenting posture, Justice Saylor contends that our analysis "appears to conceptualize the perfection of liens against real property and the pursuit of *in personam*

judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award[,]" unless otherwise provided by another statute.  42 Pa.C.S. § 8101.  The "lawful rate" of post-judgment interest is 6% per annum.  41 P.S. § 202 ("Reference in any law or document enacted or executed heretofore or hereafter to 'legal

---

judgments as mutually-exclusive, alternative options." Dissenting Op. at 2. We do not so hold. To the contrary, another provision of the MCTLL, 53 P.S. § 7251, unquestionably permits a municipality to obtain an *in personam* judgment against the owner of the property through the filing and prosecution of an action in assumpsit, and this remedy is available in addition to other remedies (including an *in rem* judgment pursuant to Section 7106(b)). We refer to the *in personam* route as an "alternative" only because the result of both courses of action is largely the same, namely the acquisition of a judgment for the delinquent amounts due along with the tariff rates that accrued up until the time of entry of the judgment, after which time the statutory judgment rate applies.

Second, Justice Saylor argues that our "approach" in this appeal weakens the collection tools provided in the MCTLL by compelling municipalities to choose between "foregoing either the accrual of lawful, tariff-based interest or the security afforded through lien perfection." Dissenting Op. at 3. We agree with this observation, but add that it is not our approach but rather the approach selected by the General Assembly when it enacted Section 7106(b). With respect to collection of liens for gas service in Philadelphia, the General Assembly took a different approach than it did for the collection of other types of municipal liens. As discussed above, *see* supra pp. 14-15, at least five other provisions in the MCTLL require municipalities to proceed first with a writ of scire facias before a judgment may be obtained unless a court has already entered a "final order or judgment." *See* 53 P.S. §§ 7442, 7446, 7449, 7452, 7455. In significant contrast, Section 7106(b) gives the municipality a judgment **automatically** upon the docketing of the lien and Section 7106(c) further provides for immediate execution on that judgment "directly without prosecution to judgment of a writ of scire facias." 53 P.S. § 7106(c).

The General Assembly obviously could have chosen some different approach, including, for example, creating other types of lien enforcement provisions rather than giving a docketed lien the immediate effect of a judgment. But it clearly did not do so. Instead, the plain language of Section 7106(b) provides that a docketed lien "shall be a judgment." 53 P.S. § 7106(b). Justice Saylor's preference for an approach that does not require a choice between foregoing either the ability to continue to charge tariff rates or the security afforded by an *in rem* judgment would require this Court to ignore either the "shall be a judgment" language in Section 7106(b) or the statutory provisions setting forth the statutory rate of interest on judgments of 6% per annum. 42 Pa.C.S. § 8101; 41 P.S. § 202. We may not, of course, do so.

rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum."). Accordingly, because a lien docketed per Section 7106(b) must be given the effect of a judgment, it follows that the post-judgment statutory rate of interest applies to the amount of the lien. On this point, we are in agreement with the Superior Court's analysis in *Equitable Gas*, in which that court addressed the effect of a judgment on the applicability of the tariff rate to delinquent utility accounts. There, a complaint filed in Allegheny County alleged that a natural gas customer, Wade, had close to $6,000 in unpaid gas bills, and Equitable Gas sought not only that amount but also pre- and post-judgment interest at 18%. *Equitable Gas*, 812 A.2d at 716. Wade filed a motion for partial judgment on the pleadings, arguing that any post-judgment interest must be calculated at the statutory 6% rate. Equitable Gas argued that it was entitled to collect the 18% tariff rate until the delinquency was satisfied. The trial court granted Wade's motion and struck the claim for 18% post-judgment interest. *Id.* On appeal to the Superior Court, Equitable Gas challenged this ruling. The Superior Court ultimately held that the utility was entitled to charge its tariff until it obtained a judgment in the court of common pleas, but that after that point, the doctrine of merger applied so as to extinguish its ability to assess the 18% interest from the date of the judgment until the judgment is satisfied. *Id.* at 718-19.

It is apparent from the unambiguous language of Section 7106 that the General Assembly intended docketed municipal liens in counties of the first class to be treated in the same manner as a judgment that has been rendered following an adjudicative process. As a result, only the statutory post-judgment interest rate of 6% per annum

applies, not the tariff rate. While this interpretation may force a municipality to choose between forgoing the collection of the tariff rate on a delinquent account in favor of obtaining a judgment upon which it can execute, this is a choice Section 7106 requires. Indeed, this is not the exclusive means for collection of a municipal lien; a municipality may also elect to pursue a judgment against the customer, as utility bills are personal debts upon the customer who receives the service. *See* 53 P.S. § 7251 (providing that in addition to liens municipalities may seek to collect on municipal claims by instituting an action in assumpsit against the owner of the property at the time charges first became payable). In that scenario, the municipality has the option of allowing the tariff to accrue until the dispute is reduced to judgment. Contrary to PGW's view, the mere existence of these alternative remedies does not compel the conclusion that they afford identical relief.

The order of the Commonwealth Court is reversed.

Chief Justice Baer and Justices Todd, Dougherty, Wecht and Mundy join the opinion.

Justice Saylor files a dissenting opinion.