J-A14024-21

2021 PA Super 181

| | | |
|---|---|---|
| IN RE: ESTATE OF ROSEMARY EMERY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOHN E. EMERY | : | No. 35 WDA 2021 |

Appeal from the Judgment Entered December 9, 2020
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  No. 124 of 2017

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

OPINION BY KING, J.:                                   **FILED: SEPTEMBER 7, 2021**

Appellant, John E. Emery, appeals from the judgment entered in the Erie County Court of Common Pleas Orphans' Court, after the court directed James P. Emery ("Executor") to distribute $25,668.97 to Appellant.  This amount constituted Appellant's share of a multiple-party savings account; the balance of which Executor transferred into another bank account for the Estate of Rosemary Emery ("Decedent").  We affirm.

The Orphans' Court set forth the relevant facts and procedural history of this appeal as follows:

> [Decedent] died on January 23, 2014, leaving a will in which she appointed her son … as executor.  Executor, on May 5, 2017, filed a first and final account for the Estate of [Decedent].  On June 20, 2017, [Appellant, who is also Decedent's son,] filed exceptions to the Executor's first and final account.  Appellant listed twelve numbered exceptions, four of which related to the Estate's transfer and administration of funds from a Northwest Savings Bank account ending in 5556 ("Account 5556").  Appellant alleged

that Account 5556 was a multiple party account and that, under the Multiple Party Account Law,[1] the balance of the account transferred to the remaining parties on the account, Mary Beth Peterseim and himself, at the time of [Decedent's] death. Accordingly, Appellant excepted to the inclusion of Account 5556 as a "distribution" in the first and final account, inclusion of $152,006.92 from Account 5556 in the accounting, failure to account for the transfer from Account 5556 to a new account, and failure to properly administer Account 5556. Executor filed an answer to exceptions to the first and final account in which he indicated, in relevant part, that there were three beneficiaries listed on Account 5556, that Account 5556 was not a multiple party account, and that it was never the intent for Account 5556 to become the property of the three named individuals. With regard to the exceptions addressing Account 5556, the court, by order dated January 18, 2018, held as follows:

> In accordance with the Multiple Party Accounts Act, the sum remaining on deposit in the at-issue Northwest Savings Bank account ending in 5556 at the time of [Decedent's] death transferred to MaryBeth Peterseim, [Executor] and [Appellant] as beneficiaries of the account. The Executor shall amend the petition for adjudication/statement of proposed distribution and the first and final account to reflect that said funds passed outside of the Estate. Executor shall be further responsible for filing any documentation necessary to amend the inheritance tax return to conform with this ruling.

Executor, on May 14, 2018, filed an amended first and final account. On July 13, 2018, Appellant filed exceptions to the amended first and final account focused primarily on the distribution of, and inheritance taxes paid on, Account 5556. The Executor filed a response. Following a hearing, the [Orphans' Court] issued a November 5, 2018 order granting the exceptions which pertained to distribution of the funds from Account 5556 and amendment of the inheritance tax return to reflect that only [one-fourth] of Account 5556 was

---

[1] 20 Pa.C.S.A. §§ 6301-6306.

taxable to the Estate. The order further provided, in relevant part, that distribution of the sum remaining on deposit in the Northwest Savings Bank account ending in 5556 at the time of [Decedent's] death shall occur. All remaining exceptions were denied.

On October 25, 2019, Appellant filed a petition for rule to show cause[2] alleging that the Executor failed to distribute the funds from Account 5556 in accordance with the January 18, 2018 order and failed to prepare and file a properly amended inheritance tax return to reflect that only [one-fourth] of Account 5556 was taxable to the Estate. As a result, Appellant requested a finding of contempt against the Executor, a surcharge against the Executor for the overpayment of inheritance tax, and payment of $50,000 in counsel fees. Executor filed a response, as well as a second amended petition for adjudication/statement of proposed distribution. Following a hearing, the [Orphans' Court] issued a November 26, 2019 order denying the request for a finding of contempt and further providing as follows:

> This [c]ourt's January 18, 2018 and November 5, 2018 orders determining that, in accordance with the Multiple Party Accounts Act, the sum remaining on deposit in the Northwest Savings Bank account ending in 5556 at the time of [Decedent's] death transferred to MaryBeth Peterseim, [Executor] and [Appellant] as beneficiaries of the account is clear. Nevertheless, it is further evident that such determination involves a controlling question of law with substantial ground for difference of opinion such that an immediate appeal from said orders may materially advance the ultimate resolution of the Estate. Accordingly, this order shall serve as this court's certification that appeal by permission would be beneficial to resolution of this

---

[2] "A rule to show cause is one that is made *ex parte*, directing an adverse party to show cause why an action should not be taken. The rule is not, except by statute, a proper substitute for original process, but is auxiliary. Additionally, the rule must be based upon a real controversy, pertinent to the case in question which, when judicially determined, will have controlling force with respect to the subject matter involved." **Rubarsky by Rubarsky v. Rock**, 471 A.2d 107, 108 (Pa.Super. 1984).

matter. It shall be the responsibility of the Executor of the Estate to, in accordance with the Pennsylvania Rules of Appellate Procedure, pursue such appeal within thirty (30) days of the date of this order.

On December 20, 2019, Executor filed a notice of appeal from the January 18, 2018 order…. The Superior Court, on January 29, 2020, issued an order determining that the January 18, 2018 [order] was immediately appealable and that Executor's failure to immediately appeal waived all objections to the same. Accordingly, Executor's appeal was quashed.

On July 28, 2020, Appellant filed the petition for rule to show cause underlying the present appeal. In the same, Appellant requested a finding of contempt against the Executor. In support thereof, he alleged that the amount in Account 5556, which this court determined in its January 18, 2018 order to be a multiple-party account, was $152,006.92. He further alleged that his share of the account was $50,668.97 and that said sum had not been distributed to him. The Executor filed a response … in which he admitted that the balance in Account 5556 was $152,006.92 at the time of [Decedent's] death. The Executor contended, however, that Appellant had already received $25,000 of those funds. Following a hearing, the [Orphans' Court] issued the December 9, 2020 order as follows:

1. In accordance with the [Orphans' Court's] January 18, 2018 order, [Appellant] is entitled to $50,668.97 as his share of the Northwest Savings Bank account ending in 5556. [Appellant] has received $25,000.00 of this entitlement. Specifically, the funds from the account ending in 5556 were transferred into the Estate account and $25,000.00 of the same was distributed, at [Appellant's] direction, to his wife….

2. In issuing the November 26, 2019 order for certification of an appeal, the [Orphans' Court] acknowledged that there existed a controlling question of law with substantial ground for difference of opinion. Consistent with that determination and considering the amount of time elapsed since the

- 4 -

> appeal was quashed and the disagreement between the parties regarding the $25,000.00 payment referenced above, [Executor's] conduct … does not, at this point, warrant an award of interest, or of attorney's fees, on [Appellant's] behalf. Nevertheless, in making distributions from the Estate, [Executor] assumed the risk of the same. In that respect, [Executor] shall, within ninety (90) days of the date of this order, pay to [Appellant] $25,668.97 in accordance with paragraph 1 above.

(Orphans' Court Opinion, filed February 18, 2021, at 1-4) (some capitalization omitted).

Appellant timely filed a notice of appeal on January 4, 2021.[3] On January 6, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on January 22, 2021.

Appellant now raises two issues for our review:

> Did the Orphans' Court err in entering the Order entered on December 9, 2020 which was a final order pursuant to 42 Pa.C.S.A. § 5505 by its purported modification of December 9, 2020 which was more than thirty days after the entry of the original order of January 18, 2018[?]

> Did the Orphans' Court err by the entry of its Order dated December 9, 2020 when its prior final order dated January 18, 2018 was appealed to number 1890 WDA 2019 which appeal was quashed *sua sponte* by the Superior Court on January 29, 2020 *per curiam*[?]

(Appellant's Brief at 3).

_____

[3] Attached to the notice of appeal, Appellant included a *praecipe* for entry of judgment against Executor.

In his two issues, Appellant argues that the January 18, 2018 order "directed that the funds held in [Account 5556] at the time of [Decedent's] death were to be transferred" to the surviving beneficiaries of the account, which included Appellant. (*Id.* at 8). Appellant relies on 42 Pa.C.S.A. § 5505 for the proposition that any modification of this order needed to occur within thirty (30) days. Appellant insists that the court's December 9, 2020 order amounted to an improper modification of the January 18, 2018 order. Specifically, Appellant claims that the December 9, 2020 order impermissibly provided that Appellant "had already received $25,000.00 and was only entitled to an additional $25,668.97." (*Id.* at 6). Because the purported modification occurred almost three years after the entry of the January 18, 2018 order, Appellant maintains the December 9, 2020 order is a nullity.

Moreover, Appellant complains that the court should not have considered any evidence regarding Executor's distribution of $25,000.00 to Appellant. Appellant contends this distribution involved funds that came out of the Estate's account, and such a distribution "cannot satisfy the funds that [Appellant] is entitled to from [Account 5556] because the multiple-party account is non-testamentary." (*Id.* at 15). Appellant concludes this Court must vacate the December 9, 2020 order and direct Executor to distribute $52,668.97 to Appellant as a one-third beneficiary of Account 5556. We disagree.

"When the Orphans' Court arrives at a legal conclusion based on

statutory interpretation, our standard of review is *de novo* and our scope of review is plenary." ***In re Estate of Fuller***, 87 A.3d 330, 333 (Pa.Super. 2014). Further, the Judicial Code governs a court's authority to modify final orders as follows:

> **§ 5505.  Modification of orders**
>
> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S.A. § 5505.

"It is well settled that a trial court has the inherent power to reconsider its own rulings. The statute which limits the time for reconsideration of orders to 30 days is applicable only to final orders." ***Key Automotive Equipment Specialists, Inc. v. Abernethy***, 636 A.2d 1126, 1128 (Pa.Super. 1994) (internal citations omitted). "In addition to its equitable power to reconsider an otherwise final order after 30 days, a court has inherent power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record at any time." ***Manufacturers and Traders Trust Co. v. Greenville Gastroenterology, SC***, 108 A.3d 913, 921 (Pa.Super. 2015) (internal quotation marks and citations omitted). "However, '[a] major substantive change, such as the total withdrawal of an order relative to a motion of record does not constitute a corrective order within the inherent powers of the trial

court or the court's statutory authority.'" *Id.* (quoting *Manack v. Sandlin*, 812 A.2d 676, 682 (Pa.Super. 2002), *appeal denied*, 572 Pa. 766, 819 A.2d 548 (2003)).

"The judicial system cannot countenance attempts to extend or renew litigation after a matter has been adjudicated and finally determined by an order no longer subject to reconsideration, reargument or appeal." *Ettelman v. Com., Dept. of Transp., Bureau of Driver Licensing*, 92 A.3d 1259, 1262 (Pa.Cmwlth. 2014) (quoting *Com., Dept. of Transp., Bureau of Motor Vehicles v. Kosak*, 639 A.2d 1252, 1257 (Pa.Cmwlth. 1994)).[4] "The finality of an unappealed order rests on the principle that, after parties have been afforded an adequate opportunity to present their claims, litigation must come to an end." *Id.* *Compare Maurice A. Nernberg & Associates v. Coyne*, 920 A.2d 967, 970 n.7 (Pa.Cmwlth. 2007) (explaining trial court denied appellant's petition for damages and attorney fees more than thirty days after entry of summary judgment in favor of appellant; because trial court's order granting summary judgment did not contain damage award, appellant's subsequent petition for damages and attorney fees sought **new order**, not modification of court's previous order).

---

[4] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 371 (2010).

Instantly, Appellant filed exceptions to the first and final account on June 20, 2017. Many of the exceptions pertained to the Executor's decision to transfer funds from Account 5556 into the Estate's bank account. (*See* Exceptions, filed 6/20/17, at ¶¶2, 5, 9-10). The court granted these exceptions by order issued January 18, 2018, which required Executor to transfer "the sum remaining on deposit in [Account 5556] at the time of [Decedent's] death" to the beneficiaries of the account. (Order, filed 1/18/18, at ¶1). Significantly, the January 18, 2018 order did not include findings regarding the exact amount of funds in Account 5556 upon Decedent's death or the precise amounts due to the account beneficiaries.

Subsequently, Appellant filed his July 28, 2020 petition for rule to show cause alleging that: 1) the balance in Account 5556 upon Decedent's death was $152,006.92; 2) the value of Appellant's share of the account was $50,668.97; and 3) Executor had not distributed this amount to Appellant. In response, Executor admitted that $152,006.92 was the correct balance in Account 5556 upon Decedent's death. (*See* Response to Petition for Rule to Show Cause, filed 8/14/20, at ¶7). Nevertheless, Executor denied that Appellant was due $50,668.97. Executor stated that "[t]he funds from [Account 5556] were transferred by Northwest Savings Bank into the account for the Estate of [Decedent] and from those funds, [Appellant] has received the total amount of $25,000.00, the same being paid, at his direction, to his wife[.]" (*Id.*)

The court conducted a hearing on Appellant's petition for rule to show cause. At that time, Executor confirmed that he transferred the funds from Account 5556 into the Estate account, and these funds were the source of the $25,000 payment to Appellant. (*See* N.T. Hearing, 12/7/20, at 14-15). In light of this testimony, the court entered the December 9, 2020 order stating, "[Appellant] is entitled to $50,668.97 as his share of [Account] 5556. Specifically, the funds from [Account] 5556 were transferred into the Estate account and $25,000.00 of the same was distributed, at [Appellant's] direction, to his wife[.]" (Order, filed 12/9/20, at ¶1). Consequently, the court ordered Executor to "pay [Appellant] $25,668.97 in accordance with paragraph 1 above." (*Id.* at ¶2).

Based upon the foregoing, the Orphans' Court concluded the December 9, 2020 order did not actually modify the January 18, 2018:

> [T]he January 18, 2018 order addressed only the issues before the court at the time, which, regarding Account 5556, were whether it was a multiple-party account which should pass outside of the Estate and who the parties were on the same. The amounts owed to the account holders as a result of the funds being transferred to the Estate were not addressed by the January 18, 2018 order and the issue of a credit was not before the court at the October 3, 2017 and November 2, 2017 hearings on Appellant's exceptions. It was not until after Executor filed the amended first and final account in May of 2018 that Appellant, in a new set of exceptions, raised the issue of recovering from the Estate $50,657.10 as his [one-third] share of Account 5556. After a hearing on this new set of exceptions to the amended account, a November 5, 2018 order issued which, for the first time, ordered distribution of the sum remaining on deposit in Account 5556 as of the time of [Decedent's] death. The Executor did not pay over funds to Appellant,

resulting in the petition for rule to show cause and, ultimately, the December 9, 2020 order. In that respect, the December 9, 2020 order was issued in response to new pleadings of the parties and did not change any aspect of the January 18, 2018 finding; instead, it simply addressed the unresolved dispute regarding payment and was, therefore, neither a modification nor rescission of the January 18, 2018 order.

(Orphans' Court Opinion at 6) (internal footnote and some capitalization omitted).

On this record, we agree with the court's determination that the December 9, 2020 order did not modify the January 18, 2018 order. We emphasize that the December 9, 2020 order did not amount to a "[a] major substantive change, such as the total withdrawal of" the January 18, 2018 order. **See Manufacturers and Traders Trust Co., supra**. Rather, Appellant's filing of the July 28, 2020 petition for rule to show cause necessitated an entirely **new order** to address the precise amount of money from Account 5556 that Executor was required to distribute to Appellant. **See Nernberg & Associates, supra**. Under these circumstances, the Orphans' Court did not run afoul of Section 5505.[5] **See Estate of Fuller, supra**. Accordingly, we affirm.

_____

[5] To the extent Appellant also argues that Executor's initial distribution of $25,000.00 was improper because the funds came out of the Estate's account rather than Account 5556, Appellant failed to cite any relevant authority in support of his claim. **See In re Estate of Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012), appeal denied, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority").

- 11 -

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2021