J-A26009-21

2022 PA Super 31

ESTATE OF: RICHARD A. CHENNISI, : IN THE SUPERIOR COURT OF
DECEASED : PENNSYLVANIA
:
:
:
:
:
APPEAL OF: LAUREN E. NEWMAN : No. 362 EDA 2021

Appeal from the Order Entered January 12, 2021
In the Court of Common Pleas of Chester County Orphans' Court at
No(s):  No. 1516-2003

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

OPINION BY BOWES, J.:                    **FILED FEBRUARY 18, 2022**

Lauren E. Newman ("Ms. Newman") appeals from the order that overruled her objection to the inclusion of an award from the September 11th Victim's Compensation Fund ("VCF") as an asset of the estate ("the Estate") of her deceased husband, Richard A. Chennisi ("Decedent").[1]  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

The following salient facts of the case are not in dispute.  Decedent lived in New York City near the World Trade Center at the time of the terrorist attacks on September 11, 2001.  In 2016, he developed leukemia, "thought

---

[1] Ms. Newman asserts that we have jurisdiction over this appeal because the January 12, 2021 order is a final order.  **See** Ms. Newman's brief at 1.  That is patently incorrect, as the order also deferred ruling upon other objections raised by Ms. Newman to the interim account and statement of proposed distribution of Decedent's estate.  However, the interlocutory order was an immediately appealable orphans' court order pursuant to Pa.R.A.P. 342(a)(6) since it determined an interest in property.  Accordingly, we have jurisdiction to adjudicate this appeal.

to be caused by his exposure to pollutants and carcinogens released in the immediate aftermath" of the attacks. Trial Court Opinion, 1/12/21, at 1.

In 2012, prior to the onset of his illness, Decedent executed a will. The instrument named as executor Decedent's brother, Michael S. Chennisi ("Executor"), and bequeathed Decedent's property to beneficiaries including Executor, Decedent's mother, Elaine Wenda Chennisi, and Ms. Newman, with whom Decedent was in a long-term relationship and had been cohabiting. Decedent and Ms. Newman married on November 1, 2016, but Decedent did not revise his will before he died four days later.

On November 10, 2016, Executor filed a petition for probate and grant of letters testamentary. In the following proceedings, it was determined that Ms. Newman, as a pretermitted spouse, was entitled to take from the Estate as if Decedent had died intestate pursuant to 20 Pa.C.S. § 2507(3) ("If the testator marries after making a will, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share or unless it appears from the will that the will was made in contemplation of marriage to the surviving spouse."). Consequently, Ms. Newman was entitled to a share of the Estate calculated as follows:

> If there is no surviving issue of the decedent but he is survived by a parent or parents, the first $30,000 plus one-half of the balance of the intestate estate. Notwithstanding the foregoing, in the case of a decedent who died as a result of the terrorist attacks of September 11, 2001, a surviving spouse shall be entitled to 100% of any [VCF] award paid pursuant to the Air Transportation Safety

and System Stabilization Act [("ATSSSA"[2])] (Public Law 107-42, 115 Stat. 230).

20 Pa.C.S. § 2102(2).

While Decedent had not been eligible for a VCF award pursuant to the original terms of the ATSSSA, and the initial window for filing claims for compensation from the VCF expired long before Decedent's death, subsequent amendments rendered him eligible. Therefore, Executor retained counsel to submit a claim. As a result, on August 22, 2020, the Estate received $731,662.58, representing an award, less counsel fees, from the VCF pursuant to the subsequent amendments to the ATSSSA.

On September 8, 2020, Executor filed a first interim account, which, due to the anticipated dispute over the VCF award, included two different proposed

---

[2] The ATSSSA was enacted on September 22, 2001, and focused primarily on "compensat[ing] air carriers for losses incurred by the air carriers as a result of the terrorist attacks on the United States that occurred on September 11, 2001[.]" P.L. 107-42, § 101(a). However, in addition to providing $5,000,000,000 to airlines, Title IV of the act established the VCF "to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes of September 11, 2001." *Id*. at § 403. The program was to be administered by a special master appointed by the Attorney General, who would promulgate rules and employ hearing masters to determine the eligibility and compensation of claimants. In its 2001 version, the ATSSSA defined an eligible claimant as someone injured or killed at the site of one of the crashes at the time of the attacks or immediately after, the crew and passengers of the crashed flights, or the personal representative of such a person. *Id*. at § 405(c)(2). Upon submission of a claim to the VCF, the individual waived the right to file a civil action for damages against the air carriers or other possibly culpable defendants. *Id*. at 405(c)(3)(B). The deadline for filing claims with the VCF was two years after regulations were promulgated by the Attorney General. *Id*. at § 405(a)(3).

distribution plans for the Estate. One proposal allocated the VCF award to the residuary of the Estate, while the other distributed the whole of the award to Ms. Newman through the Estate. Both proposed distributions deducted estate administration expenses from the VCF award, including a commission payable to Executor.

Ms. Newman filed objections to the proposed distribution and a petition for adjudication, asserting, *inter alia*, that she is entitled to 100% of the VCF award pursuant to 20 Pa.C.S. § 2102(2). Executor, both in his representative capacity and individually as a beneficiary of the will, filed objections to Ms. Newman's petition.[3] Executor took the position that the VCF award should be distributed as any other asset of the Estate, as it was not paid pursuant to P.L. 107-42, the original version of the ATSSSA referenced in § 2102(2). Rather, Executor contended, the award was made pursuant to later enactments which amended the ATSSSA, namely the James Zadroga 9/11 Health and Compensation Act of 2010 (P.L. 111-347, 124 Stat. 3623 (2010))[4], the James Zadroga 9/11 Victim Compensation Fund Reauthorization Act (P.L.

---

[3] Decedent's mother also objected to Ms. Newman's petition on the same bases as Executor and has participated in this appeal jointly with Executor. However, for ease of discussion, we shall reference only Executor when stating their collective arguments.

[4] The 2010 act, *inter alia*, provided that "Section 402 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note) is amended" to extend the filing deadline for VCF claims and to include those harmed by exposure to crash site debris. **See** P.L. 111-347, §§ 201, 202.

114-113, Title IV),[5] and the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund, (P.L. 116-34, 133 Stat. 1040 (2019))[6].

The orphans' court agreed with Executor, holding that the VCF award was an asset of the Estate. In its accompanying opinion, the orphans' court reasoned that the plain language of § 2102(2) provided for 100% spousal entitlement only if the payment was made pursuant to the ATSSSA as it existed in 2003, and Decedent was not eligible for an award pursuant to that legislation and the regulations promulgated in accordance therewith. ***See*** Orphans' Court Opinion, 1/12/21, at 7-8.

Ms. Newman filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925. Ms. Newman presents the following questions for our resolution:

> 1. Was the September 11th Victim Compensation Fund Award received by Decedent's Estate "paid pursuant to the Air Transportation Safety and System Stabilization Act (Public Law 107-42, 155 Stat. 230)" as stated in 20 Pa.C.S. §2102(2)?

> 2. Is Lauren Newman, as Decedent's surviving spouse, entitled to 100% of the September 11th Victim Compensation Fund Award pursuant to 20 Pa.C.S. § 2102(2)?

> 3. Is the September 11th Victim Compensation Fund Award subject to the Administration of the Estate?

---

[5] The 2016 legislation amended ATSSSA, in pertinent part, to increase funding and extend the filing deadline. ***See*** P.L. 114-113, § 402.

[6] The 2019 enactment expressly amended ATSSSA to, *inter alia*, extend the claim filing deadline to October 1, 2090. ***See*** P.L. 116-34, § 2.

Ms. Newman's brief at 4.

We begin our consideration of these questions with a review of the governing legal principles. We observe at the outset that when, as here, "the orphans' court arrives at a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary." ***In re Estate of Emery***, 262 A.3d 1260, 1264 (Pa.Super. 2021) (cleaned up).

Our object in interpreting and construing a statute "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The General Assembly has provided a non-exhaustive list of presumptions pertinent to ascertaining its intent, including the presumption that it "intends the entire statute to be effective and certain," that it "does not intend to violate the Constitution of the United States or of this Commonwealth," and that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1)-(3).

It is axiomatic that "when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent." ***McKelvey v. Pennsylvania Dep't of Health***, 255 A.3d 385, 398 (Pa. 2021). In such instances where the words of a law are clear, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). In considering the plain meaning of our legislature's chosen words, "[w]e construe words and phrases according to their common and approved usage. . . ." ***Linkosky v. Dep't of Transp., Bureau of Driver***

*Licensing*, 247 A.3d 1019, 1026 (Pa. 2021). "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Commonwealth v. Lee*, 260 A.3d 208, 212 (Pa.Super. 2021) (cleaned up).

"[I]n determining whether language is clear and unambiguous, the court should assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Linkosky*, *supra* at 1026. A statute is ambiguous "if a statutory term, when read in context with the overall statutory framework in which it appears, has at least two reasonable interpretations or where any reading of the statute's plain text raises non-trivial interpretive difficulties[.]" *McCloskey v. Pennsylvania Pub. Util. Comm'n*, 255 A.3d 416, 424 n.13 (Pa. 2021) (cleaned up). *See also Commonwealth v. Sanchez-Frometa*, 256 A.3d 440, 446 (Pa.Super. 2021) ("A statute is ambiguous when there are at least two reasonable interpretations of the text." (cleaned up)).

Cognizant of these principles, we re-examine the statutory language at issue:

The intestate share of a decedent's surviving spouse is:

. . . .

(2) If there is no surviving issue of the decedent but he is survived by a parent or parents, the first $30,000 plus one-half of the balance of the intestate estate. Notwithstanding the foregoing, in the case of a decedent who died as a result of the terrorist attacks of September 11, 2001, a surviving spouse shall be entitled to 100% of **any compensation**

> **award paid pursuant to the Air Transportation Safety and System Stabilization Act (Public Law 107-42, 115 Stat. 230)**.

20 Pa.C.S. § 2102(2) (emphasis added).

The trial court and all parties assert that the emphasized language unambiguously expresses a clear legislative intent, yet they reach entirely different conclusions about what that intent is.

Executor contends, and the orphans' court held, that Decedent's VCF award does not fall within § 2102(2)'s "notwithstanding" exception because it was not paid pursuant to Public Law 107-42. Executor reiterates that the initial ATSSSA legislation provided for awards only for the limited number of individuals who were on the crashed flights or who realized harm in the immediate aftermath of the crashes, and whose claims were filed by December 2003, mere months after the General Assembly amended § 2102(2). Executor asserts that, because Decedent was not among that class of people, and indeed the type of latent disease he ultimately developed was in fact rejected as a basis for eligibility at the time our General Assembly created the exception, his VCF award was not issued pursuant to "the Air Transportation Safety and System Stabilization Act (Public Law 107-42, 115 Stat. 230)." Instead, Decedent received a VCF award pursuant to P.L. 111-347, §§ 201, 202, P.L. 114-113, § 402, and P.L. 116-34, § 2, which expanded the definition of eligible claimants to include individuals who developed the latent disease suffered by Decedent and provided the filing extension that

rendered Decedent eligible. **See** Executor's brief at 16-20;**see also** Trial Court Opinion, 1/12/21, at 7-8.

Ms. Newman, on the other hand, argues that Decedent was plainly awarded funds from the VCF created by the ATSSSA (P.L. 107-42), which is codified at 49 U.S.C. § 40101 Note. While the subsequent acts of Congress amended the ATSSSA to expand eligibility, none of the amendments "created a new victim compensation fund or a separate system to compensate the victims of the September 11ᵗʰ terrorist attacks." Ms. Newman's brief at 21. Ms. Newman notes that the claim form submitted by Executor to the VCF references the applicability of "the Air Transportation Safety and System Stabilization Act, Public Law 107-42 (2001)" to the special master's claim award, as well as the applicability of the amending acts. **See** VCF Claim Form (Executor's Objections, 10/30/20, at Exhibit B) at unnumbered 14. In short, Ms. Newman's position is that "[t]he ATSSSA, as amended, is the statutory authority for the VCF, and the VCF [a]ward received by Decedent's Estate was paid pursuant to the ATSSSA." Ms. Newman's brief at 21.

Ms. Newman asserts that application of the following provision of the Statutory Construction Act renders § 2102(2) unambiguous as to its inclusion of subsequent amendments to the ATSSSA :

> A reference in a statute to a statute or to a regulation issued by a public body or public officer **includes the statute or regulation with all amendments and supplements thereto** and any new statute or regulation substituted for such statute or regulation, as in force at the time of application of the provision of the statute in which such reference is made, unless the specific language or the

context of the reference in the provision clearly includes only the statute or regulation as in force on the effective date of the statute in which such reference is made.

1 Pa.C.S. § 1937(a) (emphasis added).[7]

Executor counters that 1 Pa.C.S. § 1991, another section of the Statutory Construction Act, defines "statute" to mean only "[a]n act of the General Assembly." 1 Pa.C.S. § 1991. Hence, Executor argues, § 1937 cannot serve as a basis to construe § 2102(2) to include the subsequent amendments to the ATSSSA. *See* Executor's brief at 25-26.

Neither our Supreme Court nor this Court has had occasion to determine whether the reference to "statutes" and "regulations" in § 1937 includes only the enactments of Pennsylvania public bodies or instead is broad enough to include federal statutes and regulations. However, our sister Court and a federal district court have addressed the issue. While their opinions are not

---

[7] Executor contends that Ms. Newman waived the argument that § 1937 warrants a ruling in her favor because she did not advance it in the orphans' court. *See* Executor's brief at 25 n.10. He insists that this Court may not reverse a lower court on a theory raised for the first time on appeal. *Id*. We disagree that waiver is appropriate in this instance. First, in conducting a *de novo* review to decide the legal question of what a statute means, this Court is not limited to considering only the authorities cited by the parties. We will not interpret a law ignoring a rule of statutory construction because an appellant failed to raise it earlier. Second, Executor notes that he himself referenced § 1937 in his memorandum to the orphans' court; hence, the court made its decision cognizant of the provision. Finally, Ms. Newman does not offer a new theory on appeal. She has maintained throughout the litigation that she is entitled to 100% of the VCF award based upon § 2102(2), and now merely utilizes a statute relied upon by Executor to advocate her original theory. We discern no valid basis for us to find that Ms. Newman waived application of § 1937 to support her theory of relief.

binding on this Court, we may rely upon them for their persuasive value. *See Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254, 256 n.3 & 258 n.7 (Pa.Super. 2013).

In *Charter Hospital of Bucks Cty., Pa., Inc. v. Com., Dep't of Health*, 534 A.2d 1125 (Pa.Cmwlth. 1987), the Commonwealth Court was tasked with construing 35 P.S. § 448.103, a section of the Pennsylvania Health Care Facilities Act, which was enacted in 1979. Pursuant to the act, new institutional health services were required to first obtain a certificate of need from the department of health before establishing a new health care facility. That legislation's definition of the term "health care facility" contained an exclusion that turned upon application of "Federal Public Law 93-641, section 1523(a)(4)(B)." *Charter Hospital*, *supra* at 1126 (quoting 35 P.S. § 448.103). Shortly after the Pennsylvania law was enacted, federal P.L. 96-79 amended § 1523(a)(4)(B) to establish different standards. While the amended version of the federal statute was in effect, Charter Hospital filed for a determination that it was not required to obtain a certificate of need before developing its proposed psychiatric hospitals and obtained an unfavorable ruling. An issue on Charter Hospital's appeal was whether our legislature's reference to "Public Law 93-641, section 1523(a)(4)(B)" required application of the federal statute as of the time the General Assembly enacted 35 P.S. § 448.103, or whether the version of the federal law subsequently amended by P.L. 96-79 controlled.

The Commonwealth Court turned to § 1937(a) and its instruction that a reference to a statute or regulation "includes the statute or regulation with all amendments and supplements thereto." ***Charter Hospital***, ***supra*** at 1129 (quoting 1 Pa.C.S. § 1937(a)) (emphasis omitted). The Court then held: "Following this rule, the reference in section 103 to P.L. 93-641 § 1523(a)(4)(B) included the language amended by P.L. 96-79." ***Id***. Thus, the Court concluded that § 1937 applied to federal statutes referenced within acts of the General Assembly.

Similarly, in ***Cerutti v. Frito Lay, Inc.***, 777 F.Supp.2d 920 (W.D. Pa. 2011), the federal district court was required to determine whether the plaintiffs were excepted from overtime compensation under Pennsylvania's motor carrier exemption to the Minimum Wage Act. The Pennsylvania statute at issue, enacted in 1990, provided an overtime exemption for "[a]ny employee of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2) (relating to requirements for qualifications, hours of service, safety and equipment standards)." ***Cerutti***, ***supra*** at 926 (quoting 43 Pa.C.S. § 333.105(b)(7)) (cleaned up). The federal statute was amended several times after 1990, altering the jurisdiction of the Secretary of Transportation. The district court, in adjudicating whether the plaintiffs were exempt, applied § 1937 to hold that the reference to the federal statute included all of the amendments thereto. "Therefore, the reference to

the jurisdiction of the Secretary of Transportation in [43 Pa.C.S. § 333.105(b)(7)] refers to the Secretary's jurisdiction on the date in issue, not the jurisdiction applicable in 1990" when the General Assembly enacted the motor carrier exemption. *Id*. at 933.

In that case, the defendant proffered the same argument against the applicability of § 1937 to federal statutes that Executor pursues here: that the word "statute" in § 1937 means only Pennsylvania statutes. It maintained that § 1937 "was intended to apply to statutes issued by a public body within Pennsylvania, where changes to the incorporated provision would be under the control of the Pennsylvania legislature." *Id*. Otherwise, it would amount to an unconstitutional delegation of legislative power. *Id*. The court disagreed, based upon *Charter Hospital* and other cases. It concluded that the statute did not improperly delegate rule-making power to the Secretary of Transportation, but merely delegated the power to make a determination of whether a certain status exists. *Id*. at 935.

Executor tacitly acknowledges that *Charter Hospital* and *Cerutti* are directly on point and contrary to his position. His argument against application of those holdings is that "this Court is not bound to follow those erroneous decisions." Executor's brief at 28. He maintains that the holdings of these cases are wrong because neither discussed § 1991 of the Statutory Construction Act or this Court's decision *Ambrosia v. Yerage*, 572 A.2d 777 (Pa.Super. 1990). Executor maintains that this authority "very clearly limits

the presumption in [§] 1937 to statutes that constitute an 'Act of the General

Assembly.'" Executor's brief at 28. We disagree with Executor's assessment.

Section 1991 provides definitions for words used throughout the whole

of Pennsylvania's statutory scheme, including terms from "crosswalk" to

"optometrist" to "year." Pertinent to this appeal, § 1991 states as follows:

> The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section:
>
>     . . . .
>
> "**Statute**." An act of the General Assembly, whether under the authority of the Commonwealth or of the late Proprietaries of the Province of Pennsylvania.

1 Pa.C.S. § 1991.

This Court had cause to employ this definition of "statute" in ***Ambrosia***,

which dealt with a reference to "any other statute" in a provision of the Judicial

Code. In that case, the appellant had filed exceptions to a proposed

distribution of the sheriff's sale of her residence pursuant to a writ of

execution. Specifically, the appellant contended that she had the right to a

$15,000 exemption established under the federal bankruptcy code through

application of 42 Pa.C.S. § 8121, which provided as follows:

> **(a) General Rule.**—Except as provided by subsection (b) the exemptions from execution specified in this subchapter are in addition to any other exemptions from execution granted by any other statute.
>
> **(b) Specific sum of money.**—Except as otherwise expressly provided by statute, where the provisions of this subchapter and

- 14 -

of any other statute granting exemption from execution in terms of a specific sum of money are simultaneously applicable to execution against a judgment debtor, such exemptions shall not be aggregated, but the judgment debtor shall be entitled to the benefit of the applicable statute granting exemption in terms of the largest specific sum of money.

*Ambrosia*, *supra* at 779 (quoting 42 Pa.C.S. § 8121).

This Court applied § 1991's definition of "statute" to § 8121 and concluded that our General Assembly did not intend to make federal bankruptcy exemptions available in a state execution action, but only to allow it to enact additional exemptions to execution outside of the Judicial Code. *See Ambrosia*, *supra* at 780. The Court stated that "a matter of statutory construction, whenever a statute, such as 42 Pa.C.S. § 8121, employs the term 'statute,' it cannot be construed to refer to anything other than statutes enacted by the Pennsylvania legislature." *Id*. (cleaned up). Accordingly, we held as follows:

> [T]he legislative intent in § 8121 was to allow Pennsylvania residents additional exemptions from execution granted by any other Pennsylvania statute exclusive of Chapter 81, subchapter B. There is no support, as a matter of statutory construction, for [the appellant's] suggestion that the Pennsylvania legislature intended that the federal exemptions contained in [the bankruptcy code] are to be made available to a debtor in a state execution proceeding.

*Id*.

Since § 1937, the statute we now must construe, was not at issue in *Ambrosia*, that decision offers little guidance in the instant appeal beyond

- 15 -

demonstrating the applicability of § 1991.[8] As quoted above, § 1991 provides definitions that are applicable in any and all statutes "**unless the context clearly indicates otherwise**." 1 Pa.C.S. § 1991 (emphasis added). Accordingly, by the plain terms of § 1991, a statute may be construed to refer to a statute other than one enacted by the General Assembly if the context of the use of the word "statute" clearly indicates a different definition.

The binding holding in **Ambrosia** is that nothing about the context of the use of "statute" in § 8121 clearly suggested that the legislature contemplated exemptions to execution of a Pennsylvania judgment in addition to those provided by our General Assembly. **See Ambrosia**, **supra** at 780 ("There is no support, as a matter of statutory construction, for [the appellant's] suggestion that the Pennsylvania legislature intended that the federal exemptions contained in [the bankruptcy code] are to be made available to a debtor in a state execution proceeding."). To the extent that the **Ambrosia** Court made a broad pronouncement about the construction of statutes other than the one before it, the statements are non-binding dicta.

_____

[8] The same is true of the other case relied upon by the dissent, **Equitable Gas Co. v. Wade**, 812 A.2d 715, 717 (Pa.Super. 2002). In that case this Court construed not § 1937, but 42 Pa.C.S. § 8101, another statute concerning judgments, which stated as follows: "Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict, or from the date of the judgment, if the judgment is not entered upon a verdict or award." **Id**. at 717 (emphasis omitted). Pursuant to **Ambrosia** and § 1991, we concluded that regulations of the Pennsylvania Public Utility Commission were not "statutes" as the term was used in § 8101.

*See*, *e.g.*, *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) ("[D]icta is an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Dicta has no precedential value." (cleaned up)).

Applying the plain language of § 1991 to construe § 1937, there **is** indication that the legislature intended § 1937 to apply to statutes and regulations other than those of the General Assembly. To reiterate, § 1937 states as follows:

> A reference in a statute to a statute or to a regulation issued by a public body or public officer includes the statute or regulation with all amendments and supplements thereto and any new statute or regulation substituted for such statute or regulation, as in force at the time of application of the provision of the statute in which such reference is made, unless the specific language or the context of the reference in the provision clearly includes only the statute or regulation as in force on the effective date of the statute in which such reference is made.

1 Pa.C.S. § 1937(a).

From the context of § 1937, it is clear that the legislature, in instructing that a reference to a law within an act of the General Assembly includes subsequent amendments, supplements, and replacements, contemplated not only its own enactments, but also the laws of "any public body or officer." As such, we agree with the *Charter Hospital* Court that the reference in § 1937 to "a statute or a regulation issued by a public body or public officer" includes any and all statutes and regulations of any public body which our legislature

opted to incorporate into one of its own enactments. The import of § 1937 is to automatically include changes to laws that our legislature chose to incorporate by reference, rather than to require the General Assembly to amend each such statute every time the referenced statute or regulation is altered. Accordingly, the definition of "statute" provided in § 1991 does not render § 1937 inapplicable to establishing the plain meaning of § 2102(2)'s reference to the ATSSSA.

Therefore, we hold that the unambiguous meaning of 20 Pa.C.S. § 2102(2), is that a surviving spouse is entitled to "100% of any compensation award paid pursuant to the [ATSSSA]," including awards paid pursuant to "all amendments and supplements" to the ATSSSA. As such, the VCF award to Decedent in accordance with the James Zadroga 9/11 Health and Compensation Act of 2010 and its subsequent extensions was an award paid pursuant to the ATSSSA to which Ms. Newman is entitled to 100%. Accordingly, the ruling of the orphans' court to the contrary is reversed.

The remaining question before us is whether Ms. Newman is entitled to take the VCF award proceeds directly, or whether they are subject to the administration of the Estate. This issue requires us to return to the language of § 2102, which provides as follows:

The intestate share of a decedent's surviving spouse is:

(1) If there is no surviving issue or parent of the decedent, the entire intestate estate.

- 18 -

(2) If there is no surviving issue of the decedent but he is survived by a parent or parents, the first $30,000 plus one-half of the balance of the intestate estate. Notwithstanding the foregoing, in the case of a decedent who died as a result of the terrorist attacks of September 11, 2001, a surviving spouse shall be entitled to 100% of any compensation award paid pursuant to the [ATSSSA].

(3) If there are surviving issue of the decedent all of whom are issue of the surviving spouse also, the first $30,000 plus one-half of the balance of the intestate estate.

(4) If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate.

(5) In case of partial intestacy any property received by the surviving spouse under the will shall satisfy *pro tanto* the $30,000 allowance under paragraphs (2) and (3).

20 Pa.C.S. § 2102 (footnote omitted).

Ms. Newman contends that "the plain meaning of § 2102(2) is that, separate and apart from a surviving spouse's share of an intestate estate, a surviving spouse is entitled, by operation of law, to 100% of any VCF [a]ward." Ms. Newman's brief at 36. She posits that the statute indicates that Decedent's VCF award is not a part of the Estate at all, but rather passes directly to her outside of the Estate, "notwithstanding" the spousal share of the Estate to which she is otherwise entitled by the first sentence of § 2102(2). *Id*. at 36-37. Ms. Newman further argues that § 2102(2) indicates that the VCF award bypasses estate administration because it "does not say that a

- 19 -

surviving spouse is entitled to 100% of a VCF award, less executor's commission or expenses." *Id*. at 38.

We are not persuaded by Ms. Newman's arguments. As Executor aptly phrases it, the VCF award "cannot be said to be anything other than a portion of Ms. Newman's intestate share of the Estate as defined in Section 2102." Executor's brief at 45. The plain language of § 2102 indicates that it governs "[t]he intestate share of a decedent's surviving spouse" in various circumstances, which, in the case of subsection (2) is $30,000, plus 50% of everything but the VCF award, which award the spouse is not required to split with the other heirs. The "notwithstanding" language states a divergence from the otherwise-applicable 50% factor, not an indication that a VCF award is an asset that falls outside of a decedent's estate when a decedent leaves behind a spouse and a parent, but no issue. In other words, even though Ms. Newman, as a pretermitted spouse authorized to take under § 2102(2), is entitled to only half of the rest of Decedent's estate, she is entitled to all of the VCF portion of the Estate.

Ms. Newman further argues that § 2102(2) indicates that the VCF award bypasses estate administration because it "does not say that a surviving spouse is entitled to 100% of a VCF award, less executor's commission or expenses." *Id*. at 38. As is obvious from our reproduction of the statute above, none of the provisions of § 2102 expressly states that the spousal share is subject to reduction by an executor's commission or expenses. Yet,

that is no reason to suppose that our legislature intended that spouses who take "the entire intestate estate" pursuant to subsection (1) may not have their inheritance reduced by expenses and costs of administration, or that the no such expenses may be deducted from the one-half shares of spouses who take pursuant to subsections (3) or (4). The failure to include language in subsection (2) expressly allowing for the VCF award to be susceptible to normal costs of administration simply does not suggest that VCF awards are not subject to the same administration process as the rest of the intestate estate. We discern no expression of legislative intent to remove VCF awards from the realm of the estate altogether when such an award is paid on behalf of a Decedent who leaves behind a parent and spouse but no issue, but to include them as estate assets in all other instances.

Indeed, this highlights that Ms. Newman's interpretation is not only contrary to the plain meaning of the language of the statute, but it would lead to absurd results. If she were correct, a VCF award would constitute part of an estate, and thus be available to satisfy the estate's debts, when a childless decedent's parents predecease him, or when he is survived by a spouse and issue. However, the award would be untouchable to creditors when a childless decedent is survived by a spouse and a parent. Such an arbitrary favoring of the creditors of married orphaned decedents and the creditors of married decedents who have issue, over the creditors of decedents who leave behind

a spouse and a parent, lacks any reasonable basis and is patently not required by the language of § 2102(2).

As the orphans' court deferred ruling on the remainder of Ms. Newman's objections to Executor's account and proposed distributions, no distribution order is presently before us. Thus, our holding concerning the distribution of the VCF award in this case is limited to the following: 20 Pa.C.S. § 2102(2) does not exempt Decedent's VCF award from being an asset of the Estate or require the direct payment of the VCF award to Ms. Newman outside of the distribution of Decedent's Estate.

Therefore, we reverse the ruling of the orphans' court that Decedent's VCF was not made pursuant to ATSSSA. According to § 2102(2), Ms. Newman is entitled to all, not half, of that award in calculating her share of Decedent's Estate. However, we affirm the court's January 12, 2021 order to the extent that it held that the VCF award is an asset of Decedent's Estate, subject to administration by Executor.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Stabile joins this Opinion.

Judge McCaffery files a Concurring & Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2022