IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Gas Works,                    :
                    Petitioner             :
                                           :
          v.                               :
                                           :
Pennsylvania Public                        :
Utility Commission,                        :    No. 1291 C.D. 2018
                    Respondent             :    Argued:  February 7, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED:  March 16, 2022


          Before this Court are issues remaining for disposition on remand
following reversal of this Court's decision in *Philadelphia Gas Works v.
Pennsylvania Public Utility Commission*, 222 A.3d 1218, 1224 (Pa. Cmwlth. 2019)
(*PGW I*), by the Pennsylvania Supreme Court.  *See Phila. Gas Works v. Pa. Pub.
Utility Comm'n*, 249 A.3d 963, 974 (Pa. 2021) (*PGW II*), *reargument granted in
part* 256 A.3d 1092 (June 15, 2021), *on reargument*, 256 A.3d 1092 (Pa. 2021).
Upon review, we conclude that (1) our Supreme Court's decision in *PGW II* applies
retroactively only as to parties to this litigation and to other proceedings pending at
the time the *PGW II* decision was issued in April 2021; (2) as agreed by the parties,
a remand is necessary for presentation of evidence and a determination by the Public
Utility Commission (Commission) concerning the correct amounts of any refunds

owed by Philadelphia Gas Works (PGW); (3) based on due process principles, the Commission acted arbitrarily and capriciously and abused its discretion by imposing a $25,000 monetary sanction against PGW for past violations of the statute governing municipal liens, where the Commission's decision applying the statute fundamentally altered longstanding practice regarding PGW's docketing of municipal liens arising from unpaid gas bills; (4) the Commission's mandated changes to PGW's payment crediting system were not arbitrary or capricious and did not constitute an abuse of discretion; (5) PGW's challenge to the timetable for compliance with the Commission's order regarding billing changes has become moot due to the passage of time, and PGW is not entitled to a further extension of time to comply with the Commission's order; and (6) the Commission did not err in imposing a $2,000 penalty against PGW for violating the Commission's regulation governing the application of partial payments.

## I. Background

PGW is a municipally owned utility providing natural gas distribution services to customers in the city of Philadelphia (City). *See SBG Mgmt. Servs., Inc./Colonial Garden Realty Co., L.P.* (PUC No. C-2012-2304183, filed Aug. 23, 2018) (Comm'n Op. & Order, 8/23/18), 2018 WL 4185479 at *2. Pursuant to its Commission-approved tariff, PGW may charge interest at a rate of up to 1.5% per month, or 18% simple interest per annum (tariff rate), on overdue charges. *See SBG Mgmt. Servs., Inc./Colonial Garden Realty Co.*, *L.P.* (PUC No. C-2012-2304183, filed Aug. 21, 2015) (ALJ Decision, 8/21/15), 2015 WL 5780436 at *26; 52 Pa. Code § 56.22(a).

2

In 2012, SBG Management Services, Inc. (SBG), Colonial Garden Realty Company (Colonial Garden) and Simon Garden Realty Company (Simon Garden) (collectively, Intervenors) filed formal complaints with the Commission challenging the lawfulness of PGW's billing practices. *See* Comm'n Op. & Order, 8/23/18 at 1 & 5. Relevant here, Intervenors alleged that customers' bills contained incorrect charges and calculations of interest and penalties; accordingly, Intervenors requested a refund and/or credit for all overpayments made to PGW. *See SBG Mgmt. Servs., Inc./Colonial Garden Realty Co., L.P.* (PUC No. C-2012-2304183, filed Dec. 8, 2016) (Comm'n Op. & Final Order, 12/8/16), 2016 WL 7242243 at *5. Specifically, Intervenors alleged that PGW's practice of continuing to charge tariff-authorized late fees on accounts subject to perfected municipal liens was unlawful. *See id*.

Following hearings held in August 2013 and January 2015, an Administrative Law Judge (ALJ) issued a decision sustaining Intervenors' consolidated complaints in part and dismissing them in part. *See* ALJ Decision, 8/21/15 at 1 & 7. The ALJ sustained the consolidated complaints challenging PGW's application of the tariff rate to outstanding balances that were the subject of perfected municipal liens for unpaid gas service. *Id.* at 43. The ALJ reasoned that "PGW's claim on an outstanding debt under the [Public Utility Code[1]] is extinguished the moment a municipal lien on that same outstanding debt is filed with [the] Court of Common Pleas of Philadelphia County and docketed by the Court's prothonotary." *Id.* at 43.

The ALJ directed PGW to refund assessed late payment charges in the amount of $94,626.23 to Colonial Garden and $471,351.38 to Simon Garden. *See*

---

[1] 66 Pa.C.S. §§ 101-3316.

ALJ Decision, 8/21/15 at 2, 43 & 47. The ALJ also recommended the imposition of a $27,000 civil penalty upon PGW. Of that amount, $2,000 was a penalty for PGW's improper application of partial payments to the most recent late payment charges, rather than to charges due for prior service, in violation of Section 56.23 of the Commission's regulations, 52 Pa. Code § 56.23.[2] The remaining $25,000 penalty was for PGW's improper application of the tariff rate late fees to delinquent accounts subject to docketed municipal liens. *See* ALJ Decision, 8/21/15 at 44 & 47 (citing Section 69.1201(c) of the Commission's Regulations, 52 Pa. Code § 69.1201(c); Section 3301 of the Public Utility Code, 66 Pa.C.S. § 3301).[3] The ALJ concluded

---

[2] Section 56.23 provides:

> Payments received by a public utility without written instructions that they be applied to merchandise, appliances, special services, meter testing fees or other nonbasic charges and which are insufficient to pay the balance due for the items plus amounts billed for basic public utility service shall first be applied to the basic charges for residential public utility service.

52 Pa. Code § 56.23.

[3] Section 3301 of the Public Utility Code provides, in relevant part:

> (a) General rule.**--**If any public utility, or any other person or corporation subject to this part, shall violate any of the provisions of this part, or shall do any matter or thing herein prohibited; or shall fail, omit, neglect, or refuse to perform any duty enjoined upon it by this part; or shall fail, omit, neglect or refuse to obey, observe, and comply with any regulation or final direction, requirement, determination or order made by the commission, or any order of the commission prescribing temporary rates in any rate proceeding, or to comply with any final judgment, order or decree made by any court, such public utility, person or corporation for such violation, omission, failure, neglect, or refusal, shall forfeit and pay to the Commonwealth a sum not exceeding $1,000, to be recovered by an action of assumpsit instituted in the name of the Commonwealth. In construing and enforcing the provisions of this section, the violation,

4

that "a civil penalty in the amount of $25,000 [was] appropriate to deter PGW from applying its tariff and rates to liened indebted amounts—an improper practice which has proved highly profitable for the Company." *Id.* at 47. The ALJ determined that both bases for the imposition of the civil penalty constituted failure to provide adequate and reasonable service as required by Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501. *Id.* at 44.

PGW filed exceptions to the ALJ's decision. In a December 2016 decision, the Commission adopted the ALJ's recommendations, with certain modifications. *See* Comm'n Op. & Final Order, 12/8/16 at 68.

The Commission determined that the imposition of the civil penalty did not violate PGW's due process rights, noting that "[d]ue process in matters before the Commission requires that a party be afforded a reasonable opportunity to know the nature of its opponents' contentions so that it can prepare a suitably responsive answer." Comm'n Op. & Final Order, 12/8/16 at 63 & n.54 (citing *Duquesne Light Co. v. Pa. Pub. Util. Comm'n*, 507 A.2d 433 (Pa. Cmwlth. 1986)). The Commission also concluded that "[a] civil penalty [was] appropriate given the failure of PGW to provide an explanation and a clear numerical example of its billing methodology to

---

> omission, failure, neglect, or refusal of any officer, agent, or employee acting for, or employed by, any such public utility, person or corporation shall, in every case be deemed to be the violation, omission, failure, neglect, or refusal of such public utility, person or corporation.
> (b) Continuing offenses.--Each and every day's continuance in the violation of any regulation or final direction, requirement, determination, or order of the commission, or of any order of the commission prescribing temporary rates in any rate proceeding, or of any final judgment, order or decree made by any court, shall be a separate and distinct offense. . . .

66 Pa.C.S. § 3301(a) & (b).

[c]omplainants after several occasions to do so." *Id.* at 64. The Commission upheld the $27,000 civil penalty recommended by the ALJ. *Id.* at 68.

The Commission modified the ALJ's decision by recalculating a refund amount of $95,126.55 for Colonial Garden. *See* Comm'n Op. & Final Order, 12/8/16 at 68. Moreover, the Commission directed PGW to provide certification, within 45 days after the entry of the Commission's order, that it had modified its business practices to bill in compliance with the order and had ceased any automated billing practices that violated the Public Utility Code or Commission Regulations concerning the application of municipal liens or related collection procedures. *Id.* at 66 & 69.

PGW filed a petition for reconsideration, clarification and/or rehearing (First Petition) of the Commission's December 2016 opinion and order. PGW requested that the Commission hold another hearing to explore the "legal, policy and operational issues" that would result from compliance with its order regarding the effect of docketed municipal liens, such as the extent to which PGW would be required to pass along increased costs to customers, noting that it would be required to revise its entire collections process with respect to overdue gas distribution bills subject to docketed municipal liens. First Petition at 26-28, Reproduced Record (R.R.) at 88a-90a. With respect to the Commission's order that PGW revise its automated billing practices concerning the unlawful application of partial payments, PGW asserted that the 45-day compliance period was "totally insufficient to achieve compliance with [the] newly created rule," as it would "require PGW to totally reprogram its bill payment program for hundreds of thousands of customers." First Petition at 34, R.R. at 96a. The Commission initially granted the First Petition pending review of the merits. Comm'n Order, 12/28/16 at 1-2, R.R. at 107a-08a.

6

PGW thereafter filed a supplemental petition for rehearing (Supplemental Petition) requesting that the Commission reopen the record to consider evidence from a separate base rate proceeding with respect to "PGW's practices as they apply to all customers" and "the impacts of system-wide changes to PGW's partial payment allocation practices." *See* Supplemental Petition for Rehearing at 1 & 12, R.R. at 109a & 122a. PGW urged the Commission to reopen the record and admit exhibits to provide a more complete record upon which to determine the required scope of changes to PGW's partial payment allocation practices. Supplemental Petition at 12, R.R. at 122a.

The Commission ultimately denied PGW's First Petition and Supplemental Petition in May 2018, with one exception. *See* Comm'n Op. & Order, 5/18/18 at 1, 12 & 32. The Commission found PGW failed to submit compelling evidence supporting a compliance period of 57 weeks, but nevertheless extended PGW's compliance period to 90 days from the date of the May 2018 order. *See id.* 3-4 & 32.

PGW filed a petition for reconsideration and/or clarification (Second Petition) of the Commission's May 2018 opinion and order, requesting that the Commission "open an investigation into the legal, policy and operational consequences of" its decision on the docketing of municipal liens and PGW's application of partial payments. Second Petition at 12, R.R. at 222a. PGW asserted that the Commission's decision would substantially impact its jurisdictional authority to hear disputes related to PGW's billing practices. *See id.* PGW maintained that the Commission abused its discretion by ordering system-wide modifications that were unsupported by evidence, that the Commission failed to consider the financial impact of such modifications on PGW and its customers, and

7

that even the extended 90-day timeframe to implement the ordered modifications constituted an abuse of discretion as it was "arbitrary and not supported by any evidence in the record." *Id.* at 10 n.28, R.R. at 220a. PGW also contended that the Commission's imposition of a penalty constituted an abuse of discretion, an error of law, and a violation of PGW's constitutional rights, because the absence of prior notice of the Commission's interpretations denied PGW its constitutional right of due process. *See id.* at 9 n.27, R.R. at 219a. Further, PGW asserted that "the Commission erred in assessing a civil penalty" without first providing a "full evidentiary hearing on the propriety of issuing [the] penalty." *Id.* PGW also maintained that the Commission erred in directing credits or refunds of late payment charges. *See id.*

The Commission preliminarily granted the Second Petition in June 2017, pending review of the merits, but ultimately denied the Second Petition in August 2018. *See* Comm'n Op. & Order, 8/23/18 at 12. The Commission rejected PGW's assertion that it contravened PGW's due process rights by failing to provide notice of a purported new rule regarding billing practices and then penalizing PGW for violation of that rule. *See id.* at 9. The Commission reasoned that PGW received "more than adequate notice" by means of "the filing and prosecution of the [c]omplaint by SBG concerning the allegations and unreasonableness of PGW's billing practices," as the matter under review was initiated in 2012. *Id.* The Commission also noted that Section 3301 of the Public Utility Code, 66 Pa.C.S § 3301, expressly authorizes the imposition of civil penalties upon public utilities for providing unreasonable service in violation of the Public Utility Code, thereby affording PGW notice as to the possible imposition of the penalty. *See id.*

8

PGW appealed to this Court, which reversed. In *PGW I*, this Court determined that municipal liens arise automatically by operation of law and that filing merely perfects the preexisting lien. *PGW I*, 222 A.3d at 1222-23 (citing Section 3(a)(1) & (b) of what is commonly referred to as the Municipal Claims and Tax Lien Act (Lien Law), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7106(a)(1) & (b)). Thus, the Court concluded that the Commission erred in holding that it lacked jurisdiction over gas charges subject to docketed liens, such that PGW could not continue to impose late fees of 1.5% per month on delinquent accounts once the City docketed its municipal liens relating to those accounts. 222 A.3d at 1224. Reasoning that our holding effectively disposed of all of PGW's issues on appeal, this Court declined to address PGW's remaining arguments. *See id.*

On April 29, 2021, the Pennsylvania Supreme Court reversed *PGW I*. In *PGW II*, our Supreme Court held that a lien docketed by a city of the first class (*i.e.*, the City[4]) constitutes a judgment pursuant to Section 3(b) of the Lien Law, 53 P.S. § 7106(b), such that interest on any past due amounts secured by the docketed lien will accrue at the 6% per annum legal rate of interest applicable to judgments, rather than the 18% per annum tariff rate. *See PGW II*, 249 A.3d at 971. The Court highlighted the statute's provision that a docketed municipal lien "shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien." *Id.* at 969 (quoting 53 P.S. § 7106(b)). The Court found that "[t]he General Assembly's use of the phrase 'given the effect of a judgment' [was] critical to the outcome," reasoning that "[b]y expressly stating that the docketed lien is to be treated like a judgment with regard to the underlying claim, the General Assembly

---

[4] Philadelphia is the only first-class city in the Commonwealth. *PGW II*, 249 A.3d at 969.

has expressed its intent that docketing the lien have the same effect as a final determination of a dispute between parties without further proceedings that would generally be required to effectuate the result." *Id.* at 970. The Court determined that "[v]iewing the statutory scheme as a whole, it [was] apparent that the General Assembly intended to circumvent the traditional adjudicatory procedures and allow for docketed municipal liens in first-class cities [*i.e.*, only in the City] to constitute a judgment on the property once it is docketed with the prothonotary." *Id.* at 972. "In sum, [the Court] conclude[d] that the terms of [Section 3(b) of the Lien Law, 53 P.S. § 7106(b),] are clear and unambiguous," as "[b]y requiring that docketed municipal liens in first-class counties 'be given the effect of a judgment[,]' the General Assembly ha[d] expressed its intent that these docketed municipal liens be treated as the equivalent of a final resolution of a claim between parties." *Id.* at 973. Thus, the Court held that "because a lien docketed per [Section 3(b) of the Lien Law, 53 P.S. § 7106(b)] must be given the effect of a judgment, it follows that the post-judgment rate of interest applies to the amount of the lien." *Id.* at 973-74 (citing *Equitable Gas Co. v. Wade*, 812 A.2d 715, 716 (Pa. Super. 2002)).[5]

In June 2021, the Pennsylvania Supreme Court granted PGW's application for reargument, in part, and remanded the matter to this Court "for consideration of any outstanding issues." *See Phila. Gas Works v. Pa. Pub. Util.*

---

[5] Our Supreme Court acknowledged that "this interpretation may force a municipality to choose between forgoing the collection of the tariff rate on a delinquent account in favor of obtaining a judgment upon which it can execute," but concluded that "this is a choice [Section 3 of the Lien Law, 53 P.S. § 7106,] requires." *PGW II*, 249 A.3d at 974. The Court further noted that a "municipality has the option of allowing the tariff to accrue until the dispute is reduced to judgment" by "elect[ing] to pursue a judgment against the customer, as utility bills are personal debts upon the customer who receives the service." *Id.* at 974 (citing Section 1 of the Act of April 17, 1929, P.L. 527, *as amended*, 53 P.S. § 7251). The Court did not comment on the significance of perfected liens as record notice to third parties who might otherwise purchase properties without notice of existing liens.

10

*Comm'n*, 256 A.3d 1092 (Pa. 2021). On July 21, 2021, PGW filed a request to establish a supplemental briefing schedule in order "to streamline this Court's consideration of the outstanding issues." Application to Establish Supplemental Briefing Schedule (Application) at 5 (citing Pa.R.A.P. 2140).[6] This Court granted PGW's Application and instructed the parties to address several specific issues, as discussed below.

## II. Issues

On remand, several issues remain for this Court's disposition. First, we address whether the Supreme Court's opinion and order in *PGW II* applies retroactively and, if so, to what extent. Next, we determine whether a remand is appropriate for the presentation of additional evidence and a determination of the correct amounts of any refunds owed by PGW to Intervenors. Further, we consider whether the Commission's orders violated PGW's constitutional rights to due process by announcing, applying, and enforcing by monetary sanction, without prior notice, a new legal interpretation against PGW regarding the docketing of municipal liens. In addition, we review whether the Commission abused its discretion or acted arbitrarily and capriciously in ordering PGW to change its billing practices regarding amounts subject to docketed liens and credits for partial payments. In a related issue, we consider whether PGW's challenge to the Commission's deadline for such billing changes is moot, whether PGW is entitled to a further extension of time to comply with the Commission's order to correct its billing practices, and whether a remand is appropriate for a determination of an appropriate deadline for PGW's compliance.

---

[6] Intervenors responded, *inter alia*, that PGW failed to raise before the Pennsylvania Supreme Court and, thus, waived any potential challenge to retroactive application of *PGW II*. *See* Answer to Application (Answer) at 5.

11

Finally, we address the propriety of the Commission's imposition of a $2,000 sanction against PGW for its improper billing practices regarding partial payments.

### III. Discussion

### A. Retroactive Application of *PGW II*

PGW argues that *PGW II* established a new principle of law and, therefore, should be applied prospectively only, to liens "docketed on or after April 29, 2021," the date the *PGW II* opinion and order were issued. PGW's Supplemental Brief (PGW's Br.) at 37. PGW contends that the Pennsylvania Supreme Court established a new principle of law in *PGW II* by holding for the first time that a municipal lien docketed by the City pursuant to Section 3(b) of the Lien Law, 53 P.S. § 7106(b), constitutes a final judgment. *See id.* at 25-27 (citing *PGW II*, 249 A.3d at 970; *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014); *Fiore v. White*, 757 A.2d 842, 847 (Pa. 2000)).[7] PGW maintains that the holding of the

---

[7] Specifically, PGW points to the following portions of the Pennsylvania Supreme Court's holding in *PGW II* as establishing a new principle of law:

> By expressly stating that the docketed lien is to be treated like a judgment with regard to the underlying claim, the General Assembly has expressed its intent that docketing the lien have *the same effect as a final determination* of a dispute between parties without further proceedings that would generally be required to effectuate the result.
>
> . . . .
>
> By requiring that docketed municipal liens in first-class counties "be given the effect of a judgment[,]" the General Assembly has expressed its intent that these docketed municipal liens be treated as the *equivalent of a final resolution of a claim between parties*.
>
> . . . .

12

Pennsylvania Supreme Court in *PGW II* resulted in "a fundamental break from the previous law upon which PGW relied," and the newly established principle of law "was not clearly foreshadowed by precedent." *Id.* at 28.[8]

PGW maintains that "[p]rior to *PGW II*, numerous cases had interpreted or commented on the lien perfection process in cities of the first class [*i.e.*, the City] and no court—nor [sic] the Commission—had ever interpreted the lien perfection process as creating a judgment having preclusive effect (as the Supreme Court has now done)." PGW's Br. at 28 (citing *City of Phila. v. Perfetti*, 119 A.3d 396 (Pa. Cmwlth. 2015); *Graffen v. City of Phila.*, 984 F.2d 91 (3d Cir. 1992)). For instance, PGW observes that in *Perfetti*, this Court described docketed liens as "security-type interests," rather than judgments. PGW's Br. at 28 (quoting *Perfetti*, 119 A.3d at 405). Likewise, PGW contends that in *Graffen*, the United States Court of Appeals for the Third Circuit determined that recording a lien in the City pursuant to the Lien Law gave rise to a statutory lien rather than a judicial lien, as it was not predicated on a judicial determination, and that the court did not "suggest that a lien docketed in the City was a 'judgment' that constituted a final resolution of the claim.'" PGW's Br. at 28 (citing *Graffen*, 984 F.2d at 96). Thus, PGW maintains that it "reasonably believed, as did this Court and the Commission, that the 'old law'—*i.e.*, that

---

> *[D]ocketed municipal liens in counties of the first class to be treated in the same manner as a judgment that has been rendered following an adjudicative process*.

PGW's Br. at 26-27 (quoting *PGW II*, 249 A.3d at 970 & 973-74 (emphasis added)).

[8] Intervenors assert that PGW waived any challenge to the retroactive application of *PGW II*, a contention PGW terms "baseless," as Intervenors "freely admitted in [their] Answer to PGW's Application . . . that, "[i]n the second (and to some extent the fourth and fifth issues), PGW essentially seeks prospective-only application of the Supreme Court's decision." PGW's Br. at 35 n.13 (citing Intervenors' Answer at 4).

13

docketing merely perfects the preexisting municipal lien—was applicable to liens docketed in the City for unpaid gas service." PGW's Br. at 30.

Further, PGW maintains that "an examination of the Lien Law itself shows no foreshadowing of the Supreme Court's decision," as this law "contains provisions that treat docketed liens and court-entered judgments differently," further noting that certain provisions "discuss the process of obtaining a judgment *after* a lien is recorded." PGW's Br. at 30-31. Thus, PGW contends that the "new rule of law" established in *PGW II* "creates a 'judgment' that still requires a second judgment (entered by the courts)," as "the 'judgment' created by docketing remains subject to a *scire facias* proceeding." *Id.* at 30.

PGW contends "that in certain circumstances it would be inequitable to apply a change in the law even to the benefit of the party who successfully argued for the change." PGW's Br. at 19-20 (citing *In re Catherwood Tr.*, 173 A.2d 86, 94 (Pa. 1961); *Incollingo v. Ewing*, 282 A.2d 206, 229-30 (Pa. 1971); *Am. Trucking Ass'n v. McNulty*, 596 A.2d 784, 790 (Pa. 1991); *Oz Gas, Ltd. v. Warren Area Sch. Dist.*, 938 A.2d 274, 278 (Pa. 2007)). PGW asserts that, for example, the Pennsylvania Supreme Court has accorded purely prospective effect to certain decisions where retroactive application would necessitate the provision of tax refunds. *See* PGW's Br. at 24-25 (citing *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 232 A.3d 629, 647 (Pa. 2020); *Oz Gas*, 938 A.2d at 285). PGW asserts that "[t]he relevant equities strongly favor a purely prospective application of the Supreme Court's Opinion and Order." PGW's Br. at 31, 34 (citing *Gen. Motors Corp. v. Com.*, 222 A.3d 454, 471 (Pa. Cmwlth. 2019); *Oz Gas*, 938 A.2d at 285; *McNulty*, 596 A.2d at 789-90).

14

Moreover, PGW maintains that "[i]n no event should fully retroactive effect be ordered," as it would make PGW potentially liable for its past practice of charging 18% interest on thousands of docketed liens, and would require PGW to pass the cost on to its paying customers." PGW's Br. at 38. PGW also maintains that according *PGW II* retroactive effect would not further the operation of the decision, as "both before and after *PGW II*[] property owners have [had] the ability to seek relief from docketed liens (judgments) using the mechanisms under the Lien Law." *Id.* at 37. Therefore, in the alternative, PGW maintains that if this "Court determines that additional retroactivity is required," then retroactive application should be limited "to the case at bar and any appeals pending as of April 29, 2021." *Id.* at 37-38.

Intervenors counter that *PGW II* should be accorded retroactive effect because this decision did not establish a new principle of law but, rather, clarified existing law. *See* Intervenors' Br. at 13-14 (citing *Fiore*, 757 A.2d at 848; *Kendrick v. Dist. Att'y of Phila. Cnty.*, 916 A.2d 529, 538 (Pa. 2007)). In *PGW II*, our Supreme Court concluded that the terms of Section 3(b) of the Lien Law, 53 P.S. § 7106(b), were clear and unambiguous, reasoning that "[b]y requiring that docketed municipal liens in first-class counties 'be given the effect of a judgment[,]' the General Assembly ha[d] expressed its intent that these docketed municipal liens be treated as the equivalent of a final resolution of a claim between parties." *PGW II*, 249 A.3d at 973. Thus, the Court reasoned that "because a lien docketed per [Section 3(b) of the Lien Law, 53 P.S. § 7106(b),] must be given the effect of a judgment, it follows that the post-judgment statutory rate of interest applies to the amount of the lien." *Id.* at 973-74 (citing *Equitable Gas Co.*, 812 A.2d at 716). Based on their contention

15

that *PGW II* announced no new rule, Intervenors request an order providing for retroactive application of *PGW II*.

"The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision." *Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991). However, "a sweeping rule of retroactive application is not justified," and "[r]etrospective application is a matter of judicial discretion which must be exercised on a case by case basis." *Id.* at 1099. Here, despite PGW's argument in favor of purely prospective application of *PGW II* and Intervenors' arguments for fully retroactive effect, neither side asserts a valid reason not to apply the general rule here. This Court, therefore, concludes that *PGW II* applies both to the litigants that participated in that case and to all cases pending on direct appeal at the time of the issuance of that decision. *See id.* at 1099 & 1101 (decision declaring statutory provision unconstitutional would be applied retroactively to the parties to the litigation and to all proceedings pending at the time the decision was issued, "adher[ing] to the principle that[] a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final") (citation and quotation marks omitted).

**B. Remand for Refund Calculations**

PGW further argues that the Commission violated its right to due process by failing to permit PGW to respond to the "new normative rules" by "present[ing] evidence of the reasonableness of the directives, or whether they were even required at all." PGW's Br. at 39. For example, PGW contends that the Commission's orders impermissibly directed PGW to provide credits or refunds for liens for which the underlying debt had already been paid, asserting that Colonial

16

Garden had paid all docketed liens as of November 2011. *See id.* at 40 (citing *id.*, Appendix A, ALJ Decision, 8/21/15 at 16-17, 19, 47-48; *id.*, Appendix B, Comm'n Op. & Order, 12/8/16 at 85, 110). PGW also asserts that the Commission's orders improperly direct a refund of $471,358.38 to Simon Garden, when Simon Garden in fact paid only $520.16 in late payment charges. PGW's Br. at 41 (citing *id.*, Appendix A, ALJ Decision, 8/21/15 at 16, 19, 49-51, 63-64, 68, 73; *id.*, Appendix B, Comm'n Op. & Order, 12/8/16 at 86-95, 110-111; 66 Pa.C.S. § 1312).[9]

PGW asserts that, in the event this Court determines *PGW II* applies to require refunds to Intervenors, a remand is needed for the presentation of evidence and a determination by the Commission of the correct refund amounts. At oral argument, Intervenors agreed to a remand for this purpose. Moreover, this Court is unable to determine from the record the basis of the Commission's calculation of the

---

[9] Section 1312(a) of the Public Utility Code provides:

> If, in any proceeding involving rates, the [C]ommission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the [C]ommission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the [C]ommission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within four years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. In making a determination under this section, the [C]ommission need not find that the rate complained of was extortionate or oppressive. Any order of the [C]ommission awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. The [C]ommission shall state in any refund order the exact amount to be paid, the reasonable time within which payment shall be made, and shall make findings upon pertinent questions of fact.

66 Pa.C.S. § 1312(a).

17

refunds it ordered. Accordingly, we will grant PGW's request to remand this matter for the purpose of allowing the parties to present additional evidence concerning the correct calculation of any refunds PGW owes to Intervenors. *Accord Marshall v. Commonwealth*, 197 A.3d 294, 299 (Pa. Cmwlth. 2018) (remanding for further evidence where the parties and this Court agreed the record was inadequate for the Court to determine the adjusted basis of real property subject to foreclosure); *Straban Twp. v. Hanoverian Trust* (Pa. Cmwlth., No. 708 C.D. 2014, filed Apr. 22, 2015), slip op. at 8, 2015 Pa. Commw. Unpub. LEXIS 294, at *12[10] (agreeing with the parties' requests and remanding for evidentiary hearing).

## C. Due Process

PGW next argues that the Commission contravened PGW's due process rights by "simultaneously announcing a new rule concerning the effect of docketed liens on its jurisdiction and directing various consequences that it believed followed from this new rule[.]" PGW's Br. at 39 (citing *Pa. State Bd. of Pharmacy v. Cohen*, 292 A.2d 277, 282-83 (Pa. 1972); *Dep't of Env't Res. v. Rushton Mining Co.*, 591 A.2d 1168, 1175 (Pa. Cmwlth. 1991)).[11] PGW maintains that "the Commission reversed its longstanding view of the effect of docketed liens on PGW's ability to apply late payment charges" and then improperly penalized past conduct

---

[10] We cite this unreported opinion as persuasive authority, pursuant to this Court's Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

[11] PGW also asserted that the Commission bypassed the rulemaking process by announcing a new rule in an adjudication. *See* PGW's Br. at 39-40. PGW has not raised this as an issue for appeal before this Court.

18

as violative of the Commission's "new rule."[12]  PGW's Br. at 40 & 43.  PGW essentially asserts that the Commission violated its constitutional right to due process because the Commission failed to provide notice to PGW that its billing practices were unlawful prior to imposing sanctions on the basis of those practices.[13] Thus, PGW requests that this Court vacate the Commission's order with respect to the imposition of the civil fine, or remand to the Commission "to reconsider the imposition of a penalty in light of the fact that PGW was penalized for violation of a Commission determination that was announced for the first time in the case below."  PGW's Br. at 44-45.

Resolution of this issue depends, in part, on determining whether *PGW II* announced a new rule of law.  Although our Supreme Court determined that the statutory language was clear and unambiguous, the fact remains that longstanding practice and common understanding of municipal lawyers in the City, as in all other municipalities in Pennsylvania with power to impose municipal liens, has been that a lien arises automatically by operation of law, and filing notice of the lien, albeit in the judgment index, merely perfects the lien by providing notice of it to third parties; it does not function as a final judgment.  *See generally* discussion in *PGW I.*  Our Supreme Court's decision in *PGW II* has now set the City apart as the only municipality in Pennsylvania that acquires a final judgment merely by unilaterally filing a lien.  Moreover, *PGW I* and *II* required analysis of the interplay among various statutes and application of complex issues of statutory construction, not

---

[12] PGW does not cite any Commission decisions espousing its purported prior longstanding view that docketing municipal liens did not have the effect of a judgment, thereby precluding PGW from imposing the tariff rate on outstanding charges for gas distribution services.

[13] PGW previously objected to the Commission's imposition of the civil penalty on *ex post facto* grounds, and the Commission rejected this challenge.  *See* Comm'n Op. & Final Order, 12/8/16 at 62-63.

19

merely ruling on the meaning of a single statutory provision. This Court, therefore, concludes that *PGW II* effectively announced a new rule of law, in that it caused a sea change in the common understanding of existing law in the City regarding municipal liens.

However, resolving whether *PGW II* announced a new rule of law does not necessarily resolve fully the question of whether, by announcing a new rule and then penalizing PGW for past violations of that rule, the Commission itself violated PGW's due process rights. Intervenors assert that due process considerations are inapplicable because they did not entitle PGW to advance notice of and the opportunity to respond to the Commission's purported "new rule"—*i.e.*, its construction of Section 3(b) of the Lien Law, 53 P.S. § 7106(b). However, this argument likewise fails to address the propriety of the Commission's imposition of a fine for past conduct based on a new interpretation of the applicable law.

The authorities cited by PGW, *Cohen* and *Rushton Mining*, are distinguishable. In *Cohen*, the Pennsylvania Supreme Court reversed the imposition of professional sanctions against a pharmacist, where the conduct in question did not fall under any of the specific categories of "grossly unprofessional conduct" expressly enumerated in the Pharmacy Act[14] or any other applicable rules or regulations. *Cohen*, 292 A.2d at 278, 280. By contrast, here, the Commission determined that PGW violated the express terms of the statute by continuing to impose the tariff rate on overdue gas distribution service bills subject to docketed municipal liens. *See* Comm'n Op. & Order, 8/23/18 at 12; *see also PGW II*, 249 A.3d at 971 (concluding that Section 3(b) of the Lien Law, 53 P.S. § 7106(b), is clear and unambiguous). In *Rushton Mining*, this Court held that standard conditions

---

[14] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§ 390-1 to 390-13.

contained in coal mining permits constituted improperly promulgated and, thus, invalid regulations. Notably, this Court observed that the Department of Environmental Resources was not interpreting a statute, but rather, setting forth supplemental provisions to an existing statute. *Rushton Mining*, 591 A.2d at 1174-75. Here, by contrast, the Commission was providing its interpretation of Section 3(b) of the Lien Law, 53 P.S. § 7106(b).

We conclude that principles of due process and fundamental fairness precluded the Commission from simultaneously announcing a new interpretation of Section 3 of the Lien Law, 53 P.S. § 7106, and imposing a monetary sanction against PGW for its adherence to the prior longstanding and commonly applied interpretation. *See Snyder Bros. v. Pa. Pub. Util. Comm'n* (Pa. Cmwlth., No. 1043 C.D. 2015, filed Feb. 6, 2020), slip op. at 18-19, 2020 Pa. Commw. Unpub. LEXIS 91, at *22-23 (finding that an administrative penalty was improper where the utility "was not placed on fair notice" by the Commission's prior behavior that the utility's conduct could give rise to a monetary penalty, and suggesting that to be constitutional, an administrative enforcement provision should include an exception for good faith conduct); *HIKO Energy, LLC v. Pa. Pub. Util. Comm'n*, 163 A.3d 1079, 1109 (Pa. Cmwlth. 2017) (observing that "[i]n the context of regulatory penalties, the Due Process Clauses of the U.S. and Pennsylvania Constitutions mandate that a party have reasonable notice of the penalty that may accrue for a violation, as well as the underlying basis on which it rests"). Therefore, we reverse the Commission's imposition of a $25,000 penalty related to PGW's charges of tariff rates on delinquent accounts subject to filed liens prior to our Supreme Court's decision in *PGW II* on April 29, 2021.

21

**D. Abuse of Discretion in Mandating Billing Changes**

PGW also maintains that the Commission acted arbitrarily and capriciously and abused its discretion, in contravention of PGW's due process rights, by directing PGW to implement system-wide billing modifications without first conducting an investigation, soliciting comments from PGW, and explaining how the Commission reached its decision. *See* PGW's Br. at 45-47 (citing Section 1504 of the Public Utility Code, 66 Pa.C.S. § 1504;[15] Section 1505(a) of the Public Utility Code, 66 Pa.C.S. § 1505(a);[16] 2 Pa.C.S. § 507;[17] *Cohen*, 292 A.2d at 282-83). PGW further contends that it presented evidence before the Commission that its orders mandated "an unrealistically short transition period (90 days) for imposing significant and extensive obligations on PGW" and that PGW would require at least 57 weeks to implement the mandated changes. *See* PGW's Br. at 46 (citing Comm'n Op. & Order, 5/18/18 at 27-28). PGW asserts that, because the Commission established the timeframe for PGW to bring its billing practices into compliance, this issue was not considered at the evidentiary hearings conducted by the ALJ. *See* PGW's Br. at 45. Moreover, PGW maintains that although PGW "added some information regarding PGW's systems as part of PGW's [p]etition for

---

[15] Section 1504 of the Public Utility Code permits the Commission, after reasonable notice and hearing, upon its own motion or upon complaint, to prescribe standards for any or all public utilities. 66 Pa.C.S. § 1504.

[16] Pursuant to Section 1505(a) of the Public Utility Code, "[w]henever the [C]ommission, after reasonable notice and hearing, . . . finds that the service . . . of any public utility [is] unreasonable, . . . or otherwise in violation of this part, the [C]ommission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service . . . to be observed[.]" 66 Pa.C.S. § 1505(a).

[17] "All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail." 2 Pa.C.S. § 507.

[r]econsideration, this was done without an evidentiary or technical hearing and without the specificity required by 65 Pa.C.S. §§ 1504 [&] 1505." PGW's Br. at 45.

Regarding the Commission's directive that docketed lien amounts must no longer appear on PGW's billings, PGW contends that the Commission's "new rules" would create customer confusion, as customers would receive both a "regular" monthly bill and a separate statement after the City docketed a municipal lien securing payment of outstanding charges. PGW's Br. at 46. PGW, therefore, requests that this Court remand the matter to the Commission to (i) determine which "operational revisions" are necessary in order to achieve compliance with *PGW II*; and (ii) establish a "reasonable time[]line and schedule for implementing any such modifications." *Id.* at 47-48 (citing *Shoemaker v. Unemployment Comp. Bd. of Rev.*, 588 A.2d 100, 102-03 (Pa. Cmwlth. 1991); *Underkoffler v. State Emps.' Ret. Bd.*, 432 A.2d 319, 320 (Pa. Cmwlth. 1981)).[18]

PGW's arguments lack merit. First, the Commission ordered only that PGW cease and desist from violating the Public Utility Code and certify to the Commission, within 45 days of the Commission's order, that PGW had ceased any automated billing practices which violate the Public Utility Code or the Commission's Regulations concerning the application of municipal liens or related procedures. *See* Comm'n Op. & Order, 12/8/16 at 69. The Commission did not add further requirements in denying PGW's petitions for reconsideration. The

---

[18] Notably, PGW now appears to challenge the ordered billing practice modifications only with respect to discontinuing its practice of applying the tariff rate to overdue bills subject to docketed liens, and not, for example, the required modifications regarding the application of partial payments. *See* PGW's Br. at 45 (asserting that the ordered "system-wide modification so as to remove amounts subject to docketed liens from [] regular monthly bills . . . constitute[s] arbitrary and capricious action and/or an abuse of discretion, because none of these issues related to modifications of PGW's systems were discussed or explored in the administrative proceedings below").

23

Commission also did not modify the nature of the ordered modifications in extending the compliance period to 90 days in its denial of PGW's petition for reconsideration, clarification and rehearing. *See* PGW's Br., Appendix C, Comm'n Op. & Order, 5/18/18 at 32. Further, although the Commission denied PGW's request for reconsideration, clarification and/or rehearing of its December 8, 2016 order, the Commission nevertheless considered the verified statement of a PGW employee in extending the compliance period from 45 to 90 days. *See* Comm'n Op. & Order, 5/18/18 at 3-4, 27-28 & 32.

In addition, while there does seem to be a lack of information in the record regarding the exact changes required in PGW's systems in order to comply with the Commission's cease and desist order, the Commission has not mandated what specific methods PGW must employ to bring its billing into compliance with the Commission's order. It is difficult to see the purpose of a hearing in order to determine PGW's specific course of conduct for compliance, when the Commission has left that course open.

Moreover, as discussed in the next section, arguments about the Commission's determination of the timetable for compliance are moot.

### E. Remand Regarding Payment Credits and Related Timetable

In a related argument, PGW requests that this Court remand this matter to the Commission to permit PGW the opportunity to comment and to conduct further investigation and, thereafter, for the Commission to determine what modifications in PGW's existing billing practices, if any, are required based on our Supreme Court's decision in *PGW II*. *See* PGW's Br. at 41-42. In arguing that the Commission was obligated to conduct an evidentiary hearing concerning the

24

question of the ordered compliance window for automated billing practice modifications with respect to the effect of docketed municipal liens, PGW is essentially challenging the Commission's denial of its petitions for rehearing. Section 703 of the Public Utility Code provides, in relevant part:

> **(f) Rehearing.--**After an order has been made by the [C]ommission, any party to the proceedings may, within 15 days after the service of the order, apply for a rehearing in respect of any matters determined in such proceedings *and specified in the application for rehearing*, and the commission may grant and hold such rehearing on such matters. *No application for a rehearing shall in anywise operate as a supersedeas, or in any manner stay or postpone the enforcement of any existing order, except as the [C]ommission may, by order, direct.* If the application be granted, the commission may affirm, rescind, or modify its original order.

66 Pa.C.S. § 703(f) (emphasis added). Despite requesting that the Commission hold another hearing to consider the "legal, policy and operational issues" that would result from compliance with its order regarding the effect of docketed municipal liens, such as the extent to which PGW would be required to pass along increased costs to customers, PGW's First Petition challenged only the 45-day timeframe for compliance with the order to modify its automated billing practices concerning the unlawful application of partial payments. *See* First Petition at 26-28 & 34, R.R. at 88a-90a & 96a; Supplemental Petition at 1 & 12, R.R. at 109a & 122a. In its Second Petition, PGW challenged only in a footnote the extended 90-day timeframe for compliance generally as unsupported by evidence, and it did not specify whether the challenge pertained to modifications concerning docketed municipal liens or application of partial payments. *See* Second Petition at 10 n.28, R.R. at 220a. Thus, PGW has waived its assertion that the Commission should have conducted a

25

subsequent evidentiary hearing regarding the feasibility of the 90-day compliance window. *See* 66 Pa.C.S. § 703(f) (permitting a party to "apply for a rehearing in respect of any matters determined in such proceedings *and specified in the application for rehearing*") (emphasis added).

Moreover, this Court agrees with Intervenors that PGW's challenge to the ordered modifications, whether to the "legal, policy and operational issues" resulting therefrom or to the timeframe for compliance, is now moot. As noted above, "[n]o application for a rehearing shall in anywise operate as a supersedeas, or in any manner stay or postpone the enforcement of any existing order, except as the [C]ommission may, by order, direct." Section 703(f) of the Public Utility Code, 66 Pa.C.S. § 703(f). Thus, PGW's First Petition did not stay enforcement of the 45-day period for compliance established in the Commission's December 8, 2016 final order. *See* 66 Pa.C.S. § 703(f). Although PGW did not adequately challenge the subsequent 90-day timetable, that time limit was likewise not stayed. *See id.* As the compliance period has long since passed, PGW's challenge thereto is moot. *See Rogers v. Lewis*, 656 A.2d 1368, 1369 (Pa. 1995) (dismissing, as moot, a *quo warranto* action against mayor/executive of township challenging his right to occupy office following expiration of the term of office); *Musheno v. Dep't of Pub. Welfare*, 829 A.2d 1228, 1232 (Pa. Cmwlth. 2003) (stating that "[t]his Court will not decide moot questions").

Similarly, the feasibility of the ordered compliance timeframe is also moot. PGW insisted the 45- and 90-day timeframes were inadequate because PGW would need some 57 weeks to change its systems in order to modify its billing practices. However, several years have now passed since the Commission's initial decision, far longer than the timeframe PGW said it needed to prepare to change its

26

automated payment credit system. Even crediting PGW's assertion without an evidentiary hearing, the issue is now moot.

**F. Substantial Evidence in Support of Penalty Amounts**

Although it raises an issue asserting lack of substantial evidence in support of the Commission's imposition of penalties, PGW does not develop any such argument. *See* PGW's Br. at 42-44. Thus, that argument is waived. *See Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) (citing Pa. R.A.P. 2119(a)).

Further, PGW does not deny the conduct for which it was sanctioned, *i.e.*, that it was applying partial payments to more recent late payment charges and that it was applying the tariff rate to outstanding bills for gas distribution service which were subject to docketed liens. Absent such a denial, it is not clear how PGW could challenge the factual or evidentiary basis for the civil penalties.

Instead, PGW contends that the Commission acted arbitrarily and capriciously and abused its discretion, in violation of PGW's due process rights, by failing to provide the reasons for the $27,000 civil fine. *See* PGW's Br. at 42 (citing 2 Pa.C.S. § 507). PGW argues that the Commission improperly failed to explain which of its new rules were violated, the number of violations, or the amount of penalty associated with each violation. *See id*. at 44.

The Commission may levy a fine of up to $1,000 per day for violations of the Public Utility Code. *See* Section 3301(a) & (b) of the Public Utility Code, 66 Pa.C.S. § 3301(a) & (b). The basis for the imposition of civil penalties and the amount thereof is a question of law pursuant to Section 69.1201(c) of the Commission's Regulations, 52 Pa. Code. § 69.1201(c) (setting forth various factors to be considered in determining appropriate penalty amounts).

27

Here, the ALJ recommended the imposition of a $27,000 civil penalty against PGW. Of that amount, $2,000 was a penalty for PGW's improper application of partial payments to the most recent late payment charges, rather than to charges due for prior service, in violation of Section 56.22 of the Commission's regulations, 52 Pa. Code § 56.22; the remaining $25,000 was a penalty for PGW's improper application of the tariff rate to delinquent accounts subject to docketed liens. *See* ALJ Decision, 8/21/15 at 44, 47 (citing Section 69.1201(c) of the Commission's Regulations, 52 Pa. Code § 69.1201(c); Section 3301 of the Public Utility Code, 66 Pa.C.S. § 3301). The ALJ concluded that "a civil penalty in the amount of $25,000 [was] appropriate to deter PGW from applying its tariff and rates to liened indebted amounts—an improper practice which has proved highly profitable for the Company." *Id.* at 47. The ALJ determined that both bases for the imposition of the civil penalty constituted failure to provide adequate and reasonable service in accordance with Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501. *See id.* at 44. Thus, the ALJ explained the basis of his penalty recommendations.

The Commission adopted the ALJ's recommendation for the imposition of the civil penalty on the basis of PGW's violations of Section 56.22 of the Commission's regulations, 52 Pa. Code § 56.22, and Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501. The Commission also adopted the ALJ's rationale in fixing the amount of the civil penalty by discussing each of the factors set forth in Section 69.1201(c) of the Commission's Regulations, 52 Pa. Code § 69.1201(c), and Section 3301 of the Public Utility Code, 66 Pa.C.S. § 3301. *See* ALJ Decision,

28

8/21/15 at 44-47; Comm'n Op. & Final Order, 12/8/16 at 62-67.[19]  Therefore, like the ALJ, the Commission adequately explained its rationale for the amounts of the penalties imposed.

As concluded in Section C above, this Court reverses, on due process and fundamental fairness grounds, the imposition of the $25,000 penalty related to late charges on docketed liens imposed prior to April 29, 2021.  However, there is no such basis to reverse the $2,000 penalty for improper crediting of partial payments.  As set forth in note 1 above,  the applicable Commission regulation requires partial payments "shall first be applied to the basic charges for residential public utility service."  52 Pa. Code § 56.23.  PGW does not deny that it failed to follow that mandate in crediting partial payments and that, instead, it improperly credited partial payments to the most recent late charges.  In light of the Commission's authority to impose a penalty of $1,000 per violation, we perceive no abuse of discretion in the $2,000 penalty imposed here.

## IV. Conclusion

Based on the foregoing discussion, we conclude that our Supreme Court's decision in *PGW II* applies retroactively only as to parties to this litigation and to other proceedings pending at the time the *PGW II* decision was issued in April 2021.  As agreed by the parties, we remand to the Commission solely for the

---

[19] Regarding PGW's assertion that the Commission should have provided it with the opportunity to dispute discrepancies regarding the ordered refunds and billing adjustments at an evidentiary hearing, we note that this question is not contained in the issues preserved for appellate review in *PGW I* or in this Court's August 3, 2021 order identifying the questions to be addressed in the parties' supplemental briefs. *See PGW I*, 222 A.3d at 1221; Cmwlth. Ct. Order, 8/3/21. Likewise, we note that PGW's present contention that the Commission lacked jurisdiction to impose a penalty on the basis of PGW's debt collection practices was not preserved for appellate review. *See id.*

presentation of evidence by the parties and a determination by the Commission concerning the correct amounts of any refunds owed by PGW. Based on due process principles, we reverse the Commission's imposition of a $25,000 monetary sanction against PGW for late fees charged on municipal liens prior to April 29, 2021. We affirm the Commission's order mandating changes to PGW's payment crediting system. We reject, as moot, PGW's challenge to the timetable for compliance with the Commission's order regarding billing changes, and we deny PGW's request for a further extension of time to comply with the Commission's order. Finally, we affirm the Commission's imposition of a $2,000 penalty against PGW for violating the Commission's regulation governing the application of partial payments.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge Covey and Judge Wallace did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Gas Works,              :
                 Petitioner              :
                                :
         v.              :
                                :
Pennsylvania Public              :
Utility Commission,              :   No. 1291 C.D. 2018
               Respondent              :

# **O R D E R**

AND NOW, this 16th day of March, 2022, upon consideration of the petition for review filed by Philadelphia Gas Works (PGW), it is hereby ordered as follows:

1. The decision of the Pennsylvania Supreme Court in *Philadelphia Gas Works v. Pennsylvania Public Utility Commission*, 249 A.3d 963, 974 (Pa. 2021) (*PGW II*), *reargument granted in part*, 256 A.3d 1092 (June 15, 2021), *on reargument*, 256 A.3d 1092 (Pa. 2021), applies retroactively only as to parties to this litigation and to other proceedings pending at the time the *PGW II* decision was issued on April 29, 2021.

2. As agreed by the parties, this matter is REMANDED to the Pennsylvania Public Utility Commission (Commission) in part, solely for the presentation of evidence by the parties and a determination by the Commission concerning the correct amounts of any refunds owed by PGW to SBG Management Services, Inc., Colonial Garden Realty Company and Simon Garden Realty Company (collectively, Intervenors) relating to late fees charged on docketed

municipal liens against Intervenors for unpaid natural gas charges prior to April 29, 2021.

3. The Commission's imposition of a $25,000 monetary sanction against PGW for late fees charged on municipal liens prior to April 29, 2021 is REVERSED.

4. The Commission's order mandating changes to PGW's billing and payment crediting system is AFFIRMED.

5. The Commission's 90-day timetable for compliance with the Commission's order regarding billing changes is AFFIRMED.

6. The Commission's imposition of a $2,000 penalty against PGW for violating the Commission's regulation governing the application of partial payments is AFFIRMED.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge

2